**UNITED STATES of America, Appellee,**

v.

**Joseph MASSARO, Defendant, Appellant.**

**No. 76–1108.**

United States Court of Appeals,
First Circuit.

Nov. 8, 1976.

Certiorari Denied Jan. 10, 1977.
See 97 S.Ct. 766.

Gordon A. Martin, Jr., Boston, Mass., by appointment of the Court, with whom Susan H. Frey and Martin, Morse & Wylie, Boston, Mass., were on brief, for defendant, appellant.

Robert B. Collings, Asst. U. S. Atty., Deputy Chief, Crim. Div., Boston, Mass., with whom James N. Gabriel, U. S. Atty., Boston, Mass., was on brief, for appellee.

\* Sitting by designation

Before CLARK, Associate Justice, U. S. Supreme Ct. (Ret.),\* McENTEE and CAMPBELL, Circuit Judges.

Mr. Justice CLARK:

Appellant Joseph Massaro, while serving a prison sentence in New York State, was indicted along with two accomplices in Newton, Massachusetts on February 11, 1975. The two-count indictment charged them with (1) federal bank robbery and (2) assaulting and putting in jeopardy the lives of bank employees in violation of 18 U.S.C. § 2113(a) and (d), respectively.

Approximately eight and one-half months elapsed between the returning of the indictment and Massaro's arraignment in Massachusetts on October 24, 1975. During this time span, prosecutions were pending against Massaro on a number of unrelated matters in the State of New York, all of which predated his indictment in Massachusetts. During the course of the trial, which began February 10, 1976, a Government eyewitness described Massaro in some detail, but was not asked to identify him. Following a consultation with the prosecutor, she was recalled, testifying that she had seen Massaro before the trial began, flanked by two other men, and had recognized him as one of the bank robbers.

Massaro was convicted by a jury on Count 2 on February 10, 1976. He now appeals, raising two claims of error; (1) the indictment should have been dismissed both because the eight and one-half month period between the time of his indictment and arraignment did not comply with District of Massachusetts Rule 50(b) of the Plan for Achieving Prompt Disposition of Criminal Cases,[1] and because he was denied a speedy trial as guaranteed by the Sixth Amendment; and (2) the admission of the eyewitness's testimony over objection violated standards of federal due process, which violation was compounded by the conference between the prosecutor and the witness outside the presence of his counsel, thereby

1. Rule 50(b) essentially provides that a defendant is to be arraigned within 30 days of being indicted.

denying him the effective assistance of counsel under the Sixth Amendment.

We reject these claims for reasons more fully discussed below.

## I. THE DELAY IN ARRAIGNMENT AND TRIAL.

Massaro argues that the delay of eight and one-half months between indictment and arraignment has "no proper basis", serves "no useful purpose", and thus "should not be tolerated." Standing alone and unexplained, this might be accurate.[2] But, as is often true, Massaro does not tell the whole story.

At the time of his indictment in Massachusetts, Massaro was facing prosecution in New York on charges pre-dating this case. The New York proceedings resulted in Massaro's plea of guilty to a charge of Criminal Possession of a Weapon, 4th degree, on August 5, 1975, concluding on September 16, 1975, when he was sentenced to one year imprisonment to run concurrently with two concurrent sentences of 2–4 years he was then serving.

In August, 1975, the Government moved to set Massaro's arraignment for September 29th, 13 days after his sentencing in New York. Counsel to represent Massaro was appointed on September 5, 1975, at Massaro's request, but the first motion papers were not filed until October 28th, four days after the arraignment.

We now turn to appellant's first contention—that the indictment should have been dismissed for non-compliance with Rule 50(b) of the Plan for Achieving Prompt Disposition of Criminal Cases. This claim is wholly without merit, as Rule 50(b) does not apply to a defendant serving a term of imprisonment in another jurisdiction, but only when the defendant is present in the District of Massachusetts.[3]

Massaro next contends that the delay in prosecution "stemmed solely from unexcused negligence of the Government"[4] and that such delay denied him of his right to a speedy trial under the Sixth Amendment. This apparently refers to the fact that the Government did not prosecute him immediately following his indictment. While it is true that the Government did delay prosecution until New York had concluded its proceedings, this can hardly be characterized as "unexcused negligence" constitutional in dimension. On the contrary, the grounds for delay are quite persuasive.[5]

By awaiting disposition of the earlier New York cases before proceeding against Massaro, the Government merely adhered to the salutary practice of permitting earlier state prosecutions to be completed before instituting federal ones. This practice is not only sensible, but desirable in that it promotes state-federal comity which is the *sine qua non* of a successful crime reduction program.

2. However, in this connection, we note that this Circuit has rejected a *per se* approach to this problem, *United States v. Daley*, 454 F.2d 505, 509 (1972), where it was held that a 13-month delay "did not violate the defendant's sixth amendment right to a speedy trial in the absence of serious prejudice or improper government conduct," neither of which we find here.

3. Section 2(d) of the Plan provides: "Where a defendant is apprehended outside of this district, the time set out above shall begin to run when the Court is notified that the defendant is returned to the district."

Section 9, Responsibility of Trial Counsel, places the duty on the U. S. Attorney "(1) to undertake to obtain the presence of the prisoner for plea and trial; or (2) where unable to do

so to cause a detainer to be filed with the official having custody of the prisoner and request him to advise the prisoner of his rights under the Federal Rules of Criminal Procedure and this Plan."

4. There was an unfortunate lack of communication between federal prosecutors in Massachusetts and state prosecutors in New York as to Massaro's exact status, but as we pointed out above, state proceedings in New York were not concluded until September 16, 1975, and that termination date is the primary factor here.

5. We note at this point that there is no claim of intentional delay on the part of the Government, but only the claim of negligence.

Even were there negligence (which we do not find), such a ground has less weight in balancing the equities than would an intentional delay. *Barker v. Wingo*, 407 U.S. 514, 531, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). See also this Circuit's holding in *United States v. DeLeo*, 422 F.2d 487, 495 (1970), *cert. denied*, 397 U.S. 1037, 90 S.Ct. 1355, 25 L.Ed.2d 648 (1970), and the Second Circuit case of *United States v. Schwartz*, 464 F.2d 499, 504–5 (1972), *cert. denied*, 409 U.S. 1009, 93 S.Ct. 443, 34 L.Ed.2d 302 (1972).

Additionally, Massaro has failed to show any actual prejudice occasioned by the delay. Perhaps he experienced normal emotional stress, but having been indicted in three cases in New York and having pled guilty in one, we doubt if even this is true. This Circuit has held claims such as these are but "bald assertions," having no evidence in their support "to describe precisely its nature and ramifications." *United States v. Morse*, 491 F.2d 149, 157 (1974).

Massaro's final claim, that he lost the opportunity to have his federal sentence run concurrently with his state ones, is likewise barren of merit. *United States v. Cabral*, 475 F.2d 715, 719–20 (1st Cir. 1973).

## II. THE DUE PROCESS AND COUNSEL CLAIMS.

1. Massaro's due process claim is predicated on the admission of testimony, over objection, of one Janet McKanney, an eyewitness to the bank robbery. In her initial testimony, Ms. McKanney gave a detailed description of Massaro. At the conclusion of her testimony, The United States Attorney asked that she not be excused, and inquired of her, during a recess, if she recognized anyone. Ms. McKanney explained that while outside the courtroom waiting for the trial to begin she saw the defendant walking down the hall with two other men, and immediately recognized him. The United States Attorney informed defense counsel of this incident, further advising him that no F.B.I. agents or United States Attorneys were present at the time Ms. McKanney saw Massaro.

Over objection, the District Court allowed Ms. McKanney to testify that she recognized the defendant in the corridor, and that he was the person she had seen in the bank. She testified further that this was the first time she had seen him since the robbery, that the identification was strictly her own, and that she had not been influenced by anyone in any manner in making the identification.

We have studied the record on this due process claim, and we find that the event was a pure happenstance without suggestive circumstances. The two men with Massaro were United States Marshals, but all three men wore street clothes. It is true that the Marshals each wore jackets while Massaro did not; but they had on no badges, there were no handcuffs and Massaro was not held by the arms, i. e., there was no evidence of custody. Indeed, Ms. McKanney probably would have come to the same conclusion when she saw Massaro in the courtroom, and such an identification would have been admissible unless, under the totality of the circumstances, the procedure was so suggestive as to violate that fairness required by due process of law. This Circuit has held that a chance meeting in a courthouse parking lot presented no due process problem. *Allen v. Moore*, 453 F.2d 970 (1972), *cert. denied*, 406 U.S. 969, 92 S.Ct. 2422, 32 L.Ed.2d 668 (1972). As Judge Aldrich concluded:

"Spontaneous identifications under such conditions might be said to emphasize the witness' reliability, rather than the reverse." At 974.

At least five other Circuits have reached the same conclusion.[6] We also note the District Court's finding that Ms. McKanney

---

6. See *United States v. Matlock*, 491 F.2d 504 (6th Cir. 1974), *cert. denied*, 419 U.S. 864, 95 S.Ct. 119, 42 L.Ed.2d 100 (1974); *United States v. Davis*, 487 F.2d 112 (5th Cir. 1973), *cert. denied*, 415 U.S. 981, 94 S.Ct. 1573, 39 L.Ed.2d 878 (1974); *United States v. Hamilton*, 469 F.2d 880 (9th Cir. 1972); *United States v. Conner*, 149 U.S.App.D.C. 192, 462 F.2d 296 (1972); *United States v. Davis*, 407 F.2d 846 (4th Cir. 1969).

had "a spontaneous and genuine reaction when she saw the defendant." This negates the likelihood of misidentification, particularly as this finding is not attacked here as insupportable in the record.

It is true that no lineup was held because there was no indication that Ms. McKanney could make an in-person identification. There was no request for sequestration of witnesses. In fact, the Government was basing its case on the fingerprints of Massaro on the rear door of the bank where the robbers exited after the robbery. It is apparent that Ms. McKanney's description of Massaro in her initial testimony so impressed the prosecutor that he decided to further pursue this avenue at the next recess.

Finally, the trial judge instructed the jury that "if you are not satisfied upon all of the evidence taken together that Ms. McKanney has made an accurate identification, then you would be obliged to find the defendant not guilty." Indeed, his further instruction stated: "If it were not for the identification testimony of Ms. McKanney, that testimony she gave on her second time on the stand, there would not be evidence sufficient to warrant a finding of guilty." Massaro had the opportunity on cross-examination to point up the circumstances surrounding the identification and the likelihood of misidentification. Apparently the jury believed Ms. McKanney, and the judge, on denying a motion for acquittal, again observed that the McKanney identification was spontaneous and credible.

2. Massaro bases his contention that he was entitled to have counsel present at Ms. McKanney's conversation with the prosecutor during the recess period on *United States v. Wade*, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), and *Kirby v. Illinois*, 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972). The point was not raised at trial and is urged here for the first time.

It is standard practice for witnesses to be interviewed privately before, during, and after their appearance on the stand. Unfortunately, there was no indication prior to Ms. McKanney's testimony that she would be able to identify Massaro. Under the circumstances, the better practice here might well have been for opposing counsel to be present at the recess interview. However, we fail to see any harm resulting from the defense counsel's absence. The defense had full opportunity to cross-examine Ms. McKanney; there was nothing suggestive— either intentional or unintentional—in the pure happenstance of her seeing and identifying Massaro; there is no claim of an arranged confrontation as in *Wade* or any suggestion by the prosecutor as in *United States v. Roth*, 430 F.2d 1137 (2d Cir. 1970), *cert. denied*, 400 U.S. 1021, 91 S.Ct. 583, 27 L.Ed.2d 633 (1971), on which Massaro relies. The identification had an entirely independent basis in nowise connected with the prosecution. Ms. McKanney was both positive and firm in her identification, and the presence of defense counsel would have made no difference. Indeed, the fact that no objection was made at the time indicates that there is no substance to the claim.

The judgment therefore is affirmed.