52 F.3d 335
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Anthony LaPIERRE, Defendant-Appellant.
 No. 94-10046.
 United States Court of Appeals, Ninth Circuit.
 Submitted March 30, 1995.*
Decided April 7, 1995.
 
 Before: NORRIS, HALL, and FERNANDEZ, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 In 1991, Anthony LaPierre was convicted of three counts of bank robbery in violation of 18 U.S.C. Sec. 2113(a) and two firearms offenses in violation of 18 U.S.C. Secs. 924(c)(1) and 922(g)(1). On appeal, we held that LaPierre's Sixth Amendment right to counsel was violated because LaPierre's attorney was not present during the entire pretrial lineup presentation, and that the district court's admission of a police detective's lay opinion as to the identity of the defendant in bank surveillance photographs was an abuse of discretion. United States v. LaPierre, 998 F.2d 1460, 1463-65 (9th Cir.1993). To allow the government to establish by clear and convincing evidence that the witnesses' in-court identifications of the defendant had origins independent of the constitutionally flawed pretrial lineup and that the admission of testimony concerning the pretrial lineup and the detective's lay opinion was harmless beyond a reasonable doubt, we vacated the convictions and remanded. Id. at 1465. After conducting an evidentiary hearing, the district court found that the witnesses' in-court identifications did have origins independent of the pretrial lineup, and that the admission of the detective's testimony and testimony concerning the pretrial lineup was harmless. ER at 186. The district court therefore reinstated LaPierre's convictions. We now affirm.
 
 
 3
 * On remand, the district court found that the witnesses' in-court identifications of LaPierre had origins sufficiently independent of the constitutionally infirm pretrial lineup so as to be reliable.[1] We apply the five-factor, totality of the circumstances test established by Neil v. Biggers, 409 U.S. 188, 199-200 (1972), to the facts of this case. The factors are: 1) the witness's opportunity to view the perpetrator at the time of the crime, 2) the witness's degree of attention, 3) the accuracy of the witness's prior description, 4) the level of certainty demonstrated by the witness at the confrontation, and 5) the length of time between the crime and the confrontation. United States v. Dring, 930 F.2d 687, 692-93 (9th Cir.1991), cert. denied, 113 S.Ct. 110 (1992). In terms of the final factor, the confrontation in this case, the pretrial lineup, occurred approximately two weeks after the crimes.
 
 
 4
 In evaluating the totality of the circumstances surrounding the pretrial lineup, we also factor in the FBI agent's improper and unduly suggestive remarks about the defendant's identity after two witnesses had chosen him. However, deterrence of improper official conduct at pretrial identification procedures "is not the primary purpose behind judicial review of tainted identification testimony." United States v. Field, 625 F.2d 862, 868 (9th Cir.1980) (quoting Green v. Loggins, 614 F.2d 219, 222 (9th Cir.1980)). The purpose is primarily "to determine whether the witness' testimony retains sufficient indicia of reliability." Field, 625, F.2d at 868. "Thus, we need not consider the reprehensibility of police conduct in these cases except as it bears upon the reliability of the challenged identification." Id.
 
 A. Bank Teller Phyllis Nani Wilkins
 
 5
 At the evidentiary hearing, Wilkins testified that, when the Kahuku branch of the First Hawaiian Bank was robbed on July 16, 1991, she got a clear view of the robber for about fifteen seconds from one and a half to two feet away. ER at 10, 30. Therefore, she had a good "opportunity the view the perpetrator at the time of the crime" when her attention was high. When presented with a photographic array of possible suspects, Wilkins stated that LaPierre's features were very close to the perpetrator, but that she wanted to view him in person. ER at 23. At the pretrial lineup, Wilkins' selection of LaPierre was immediate and unequivocal, demonstrating a very high "level of certainty ... at the confrontation." ER at 20. Based on the totality of the evidence, the district court concluded that the pretrial lineup "did not taint [Wilkins's] preexisting ability to identify the defendant." ER at 181. We agree.
 
 B. Bank Teller Mary Root
 
 6
 At the evidentiary hearing, Root testified that, when the Haleiwa branch of the First Hawaiian Bank was robbed on July 19, she got a clear view of the robber for thirty seconds from one and a half to two feet away. ER at 34-35. Therefore, she also had a good "opportunity to view the perpetrator at the time of the crime" when her attention was high. When Root selected LaPierre from the pretrial lineup, she was very sure of her selection, demonstrating a high "level of certainty ... at the confrontation."[2] In terms of "the accuracy of the witness's prior description," there was a minor discrepancy in Root's description of the robber's hair length. Additionally, after the lineup, she compared notes on whom she had selected with Wilkins. ER at 46. The district court concluded, however, that "Root has a clear, direct, and sustained view of the defendant, and the court is persuaded that her view of him at the lineup made little difference to her subsequent identification of him." ER at 182. We agree.
 
 C. Bank Teller Anne Bonilla
 
 7
 At the evidentiary hearing, Bonilla testified that, when the Kepalama branch of the Honfed Bank was robbed on July 26, she got a clear view of the robber who wore sunglasses for about five to ten seconds from one and a half feet away. ER at 50-52, 54. Therefore, she did not have as good an "opportunity to view the perpetrator at the time of the crime" as the first two witnesses, though she was viewing him with a high degree of attention. In terms of "the accuracy of the witness's prior description," she initially described him as having a crewcut to police, but then later testified at trial that he did not have a crewcut. Upon seeing him at the lineup, however, she said, "That's him." After she selected LaPierre, the FBI agent told her, "You picked the right one." ER at 59. Bonilla testified that she identified LaPierre at trial because he was the man who robbed her, not because he was the man she picked at the lineup. ER 57. She also testified, however, that one of the reasons she was comfortable with her in-court identification was the statement made to her by the FBI agent. ER at 60-61. Nonetheless, the district court found that "Bonilla appeared to know with substantial certainty that she had chosen the right person before any comments were made to her." ER at 183. We agree.
 
 D. Bank Teller Terry Ann Daunie
 
 8
 At the evidentiary hearing, Daunie testified that, when the Kepalama branch of the Honfed Bank was robbed on July 26, she got a clear view of the robber who wore sunglasses for three to five seconds from about twenty-five feet away. ER at 129. Therefore, she did not have as good an "opportunity the view the perpetrator at the time of the crime" as the first two witnesses, though she was viewing him with a high degree of attention. In term of "the accuracy of the witness's prior description," there was a minor discrepancy in Daunie's description of the robber's hair color. An FBI agent told Daunie that she "did good" in selecting LaPierre from the lineup. ER at 141. However, the district court determined that Daunie's in court identification was independent of the improper pretrial lineup, and that the FBI's comments did not affect her. We agree.
 
 II
 
 9
 On remand, the district court found that its admission of testimony on the results of the lineup and its admission of a police detective's lay opinion as to the identity of the defendant in bank surveillance photographs was harmless error, "[i]n light of the overwhelming evidence of guilt." ER at 186. In addition to the witnesses' testimony, that evidence includes testimony from a police officer that LaPierre denied that another suspect had anything to do with the robbery, testimony from another police officer that LaPierre tried to bribe him with an undiscovered stash of money, and testimony from a truck driver who gave LaPierre a ride that LaPierre showed him a gun, loaded it, and said he was going to go rob a bank. We therefore agree with the district court's harmless error analysis.
 
 
 10
 AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a) and Ninth Circuit Rule 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 This circuit has not decided by what standard we should review a district court's conclusions that an out-of-court identification is not so impermissibly suggestive as to taint subsequent identification testimony. United States v. Nash, 946 F.2d 679, 681 (9th Cir.1991) (noting dispute as to standard of review); United States v. Dring, 930 F.2d 687, 692 (9th Cir.1991) (same), cert. denied, 113 S.Ct. 110 (1992). We need not resolve this dispute because under either an abuse of discretion or a de novo standard, the government prevails in this case
 
 
 [2]
 Following the robbery but before any lineup, Mary Root thought that she might not be able to recognize the robber if she saw him again. She testified that "like Caucasian people looking at Orientals, we all look alike and, for myself, being Oriental, sometimes Caucasian people kind of look similar, too...." ER 43. However, when faced with the lineup, she in fact made a selection, about which she felt very sure. ER 48. Any prior uncertainty she felt about her ability to select the robber, therefore, is irrelevant