979 P.2d 659

**STATE of Idaho, Plaintiff–Respondent,**

v.

**James SCHEVERS, Defendant–Appellant.**

No. 24164.

Court of Appeals of Idaho.

Feb. 9, 1999.

Rehearing Denied May 4, 1999.

Review Denied July 9, 1999.

Roy, Nielson & Barini–Garcia, Twin Falls County Public Defender, Twin Falls, for appellant. Lisa A. Barini–Garcia argued.

Hon. Alan G. Lance, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for respondent. Kenneth K. Jorgensen argued.

LANSING, Judge.

In this appeal, we are asked to vacate James Allen Schevers' judgment of conviction for robbery because, it is asserted, the district court should have suppressed testimony regarding a witness's identification of Schevers as the robber. We affirm.

## FACTS

Schevers was charged with committing a robbery at a liquor store. Prior to his trial, he filed a motion seeking to suppress a witness's in-court identification and her pretrial out-of-court identification of Schevers as the robber.

Evidence presented at the suppression hearing revealed the following facts. On the evening of November 25, 1996, Judy Buscher was working at a state liquor store in Twin Falls when the store was robbed by a man with a firearm. During the course of the robbery, which lasted about a minute and a half, Buscher attempted to comply with the robber's instruction not to look at him, but she got two quick glances at the man. Shortly after the robbery, the police arrived and Buscher gave a description of the robber. She also worked with a police officer in putting together a computer-generated sketch which she considered to be a satisfactory depiction of the robber.

On December 6, 1997, Buscher viewed a photo lineup containing driver's license photos of six men. Twin Falls Detective Dennis Rinehart read to Buscher from a form which essentially stated that she should not pick someone from the lineup unless she was sure. According to Detective Rinehart's testimony at the motion hearing, after looking at the photos Buscher initially stated something to the effect of, "I can't help you." Buscher, however, testified that she did not remember saying this. Detective Rinehart then told her to remember the suspect's eyes, as she had previously described the robber's eyes as memorable because they were discolored. Buscher then picked Schevers' photo as the "closest" to the man who robbed the store. Rinehart testified that he then showed Buscher a photocopy of a different photograph of Schevers and told her that he was the police's suspect. Buscher testified that she did not remember being shown the second photo.

Evidence at the suppression hearing also disclosed that, immediately before Schevers' preliminary hearing, while waiting in the courthouse hallway, Buscher saw Schevers being brought into the courtroom. He was wearing orange inmate coveralls and was shackled with two or more other similarly clad inmates. Upon seeing Schevers, Buscher said to Rinehart "That's him in the middle." She was pale and visibly shaken. Buscher apparently thereafter identified Schevers as the robber during the preliminary hearing.

Based upon the foregoing evidence, Schevers argued that the pretrial identification procedures were unduly suggestive and had so tainted Buscher's identification that testimony regarding the pretrial identification should be excluded and Buscher should not be allowed to identify Schevers at trial. The district court denied the motion.

After a jury trial Schevers was convicted of robbery, I.C. § 18–6501, –6502. On appeal, he challenges the district court's denial of his motion to suppress all evidence of Buscher's identification of him. He argues that the photo lineup procedure and the circumstances of Buscher's encounter of him in the courthouse hallway were so suggestive as to violate due process and that these out-of-court events tainted Buscher's identification of Schevers at trial.

## ANALYSIS

Schevers' motion presented mixed questions of law and fact. Ordinarily, we

must defer to a district court's findings of fact unless the findings are clearly erroneous. *State v. Medley*, 127 Idaho 182, 185, 898 P.2d 1093, 1096 (1995); *State v. Welker*, 129 Idaho 805, 808, 932 P.2d 928, 931 (Ct.App.1997), *review denied*. In this case, however, apart from stating a conclusion that the identification was not unduly suggestive, the district court did not make, and neither party requested, written or oral findings of fact. In denying the motion, the district court stated that it "adopts the reasoning in the State's brief as being persuasive," but that brief was not made a part of the record on appeal. We note, however, that even if the brief were available for our review, it would not contain findings of fact. Thus, the district court's disposition does not express a factual basis for denying the motion that we can directly review. However, our Supreme Court has held that where a trial court did not make express findings of fact in the disposition of a motion, an appellate court should examine the "implicit" findings that support the trial court's ruling. *State v. Kirkwood*, 111 Idaho 623, 726 P.2d 735 (1986). We therefore review the implied findings that would support the district court's determination that the identification procedures employed here were not unduly suggestive, and we will uphold those findings if they are supported by substantial evidence. *Id.; State v. Kopsa*, 126 Idaho 512, 517, 887 P.2d 57, 62 (Ct.App.1994); *State v. Middleton*, 114 Idaho 377, 380, 757 P.2d 240, 243 (Ct.App.1988). We then exercise free review over the trial court's determination of whether due process standards have been satisfied. *State v. Weber*, 116 Idaho 449, 452, 776 P.2d 458, 461 (1989); *State v. Zubizareta*, 122 Idaho 823, 826, 839 P.2d 1237, 1240 (Ct.App.1992).

◼ In a due process analysis of an allegedly suggestive identification procedure, the central inquiry is whether, under the totality of the circumstances, the procedure created a very substantial likelihood of misidentification. *Manson v. Brathwaite*, 432 U.S. 98, 116, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977); *Neil v. Biggers*, 409 U.S. 188, 198, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972). Idaho courts have applied this test as a two-step process. *See State v. Hoisington*, 104 Idaho 153, 162, 657 P.2d 17, 26 (1983); *State v.*

*Gray*, 129 Idaho 784, 796–97, 932 P.2d 907, 919–20 (Ct.App.1997), *review denied, cert. denied* —— U.S. ——, 118 S.Ct. 81, 139 L.Ed.2d 39 (1997); *State v. Alger*, 115 Idaho 42, 45 n. 2, 764 P.2d 119, 122 n. 2 (Ct.App.1988). First, we consider whether the out-of-court identification procedure was suggestive based upon the totality of the circumstances. *Gray*, 129 Idaho at 796, 932 P.2d at 919; *Alger*, 115 Idaho at 44, 764 P.2d at 121. If the procedure was suggestive, we then consider whether other factors demonstrate that the identification was nonetheless reliable. *Gray, supra*. So long as the reliability of the identification outweighs the corrupting effect of suggestive procedures, the admission of the identification testimony will not violate due process. *Manson*, 432 U.S. at 116–17, 97 S.Ct. 2243; *Hoisington*, 104 Idaho at 162, 657 P.2d at 26.

◼ Schevers argues first that the photo lineup which Detective Rinehart showed to Buscher was impermissibly suggestive because none of the six men depicted in the lineup matched Buscher's description of the robber. The photo lineup was prepared by the State of Idaho Driver's License Bureau. It contained six photographs of clean-shaven men of about the same age, all wearing glasses. The pictures were all Idaho driver's license photos of the same size and type. We cannot discern anything in this photo array that emphasizes Schevers' photograph more than the other five. Nor are we persuaded by Schevers' argument that the lineup was impermissibly suggestive because none of the photos matched the description of the robber that Buscher gave to the police. Schevers does not contend that his photo bore a greater similarity to Buscher's description than the other photos did, and the fact that the description was dissimilar to *all* of the photos would not tend to focus the witness on Schevers' picture. Therefore, we find Schevers' argument that the photo lineup alone violated his right to due process to be without merit.

◼ We next consider his argument that Detective Rinehart violated due process standards when he showed Buscher the second photograph of Schevers after her initial selection of his photo from the lineup. Con-

duct or remarks by law enforcement agents that tend to reinforce a weak or tentative identification may render an otherwise fair pretrial identification procedure, such as the photo array in this case, impermissibly suggestive. *United States v. Thai,* 29 F.3d 785, 810 (2d Cir.1994). However, as noted in our discussion of our standard of review, we are constrained to imply factual findings that would support the district court's denial of Schevers' motion to suppress. *Kirkwood,* 111 Idaho at 625, 726 P.2d at 737. Here, conflicting testimony was presented. Detective Rinehart testified that when he showed Buscher the photo array, she initially stated that she "could not help." According to Rinehart, after some words of encouragement, Buscher then pointed to Schevers as the man who looked "the most like" the robber, but she did not make a positive identification. Rinehart further testified that he then showed Buscher a single photocopied photograph of Schevers and informed her that he was their suspect. If accepted as true, this testimony—that Rinehart bolstered an equivocal identification by showing the witness a separate photo of the defendant and telling her that he was the police's suspect—could support a conclusion that the identification procedure was impermissibly suggestive. However, Buscher's testimony contradicted Rinehart's. She had no recollection of initially saying, "I can't help you," to Detective Rinehart, nor did she recall feeling any uncertainty or hesitation in picking Schevers out of the photo array. She testified that her initial identification of Schevers was positive and unequivocal. She did not remember subsequently being shown a second photograph of Schevers. The district court reasonably could have resolved this conflicting evidence in favor of the State to reach its ultimate conclusion that the procedure was not suggestive. At a suppression hearing the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez–Molina,* 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *Kirkwood, supra.*

We turn next to Buscher's chance encounter with Schevers in the courtroom hallway before the preliminary hearing. Schevers argues that this encounter was suggestive, reinforced Buscher's earlier tentative identification, and tainted her subsequent in-court identification.

We find this argument to be without merit. First, it presupposes that the original identification procedure was tentative and open to reinforcement. As we have explained, there is evidence in the record upon which the district court could find that Buscher's identification of Schevers from the photo lineup was not tentative or uncertain. Second, the evidence supports the district court's determination that the hallway encounter was not impermissibly suggestive. Case law concerning witnesses' accidental viewing of suspects suggests several factors that courts may consider in determining whether such encounters so contaminate the trial as to deprive a defendant of due process. These factors include, without limitation, whether the setting and circumstances of the encounter indicate to the witness that the defendant was accused of a crime; whether the witness's attention was directed at the defendant; and whether the confrontation resulted from the State's carelessness. *See, e.g., United States v. Domina,* 784 F.2d 1361, 1370 (9th Cir.1986); *Green v. Loggins,* 614 F.2d 219, 223 (9th Cir.1980); *United States v. Massaro,* 544 F.2d 547, 550 (1st Cir.1976); *Allen v. Moore,* 453 F.2d 970, 974 (1st Cir.1972 ).

Some of these factors weigh in favor of a finding of suggestiveness in the present case. Schevers was shackled and dressed in orange jail garb, indicating that he was a suspect, and the State could have used more care in avoiding this confrontation, especially in a case which relied heavily upon a single witness's identification of the defendant. On the other hand, however, the police did not direct Buscher's attention to Schevers, and he was not singled out as a lone suspect but was in a group of jail inmates. Buscher's hallway identification of Schevers was totally spontaneous and unsolicited. Her identification also bore indicia of reliability in that evidence indicated that she was visibly shaken by the encounter. These factors weigh in favor of a finding of reliability. *Massaro, supra; United States v. Matlock,* 491 F.2d

504 (6th Cir.1974); *Allen v. Moore, supra.* *Compare United States v. Emanuele,* 51 F.3d 1123, 1131 (3d Cir.1995) (stating that witness's statement, "It has to be him," indicated unreliable identification). In weighing these factors, the district court could properly find that the hallway encounter was not suggestive.

 The evidence supports the district court's implied findings underlying its determination that the out-of-court identifications in this case were not suggestive. Therefore, we need not consider the second inquiry in the due process analysis for identification testimony—whether an identification was reliable despite a suggestive circumstance. *Hoisington,* 104 Idaho at 162, 657 P.2d at 26; *Gray,* 129 Idaho at 796, 932 P.2d at 919; *Alger,* 115 Idaho at 45 n. 2, 764 P.2d at 122 n. 2. When the identification procedure is not suggestive, questions concerning the reliability of the witness's identification go to the weight of the evidence rather than its admissibility. *See United States v. Maldonado-Rivera,* 922 F.2d 934, 973 (2d Cir.1990).

## CONCLUSION

There is evidentiary support for the district court's implied factual findings underlying its denial of Schevers' motion to suppress the identification testimony. Schevers has not shown that the district court's admission of that testimony violated his right to due process. Accordingly, we affirm the judgment of conviction.

Chief Judge PERRY and Judge Pro Tem HORTON, concur.