**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 48440**

| | |
|---|---|
| STATE OF IDAHO, | ) |
| | )   **Filed: September 8, 2021** |
|     **Plaintiff-Respondent,** | ) |
| | )   **Melanie Gagnepain, Clerk** |
| v. | ) |
| | )   **THIS IS AN UNPUBLISHED** |
| APRIL DAWN RAMOS, | )   **OPINION AND SHALL NOT** |
| | )   **BE CITED AS AUTHORITY** |
|     **Defendant-Appellant.** | ) |
| | ) |

Appeal from the District Court of the Seventh Judicial District, State of Idaho, Bingham County. Hon. Darren B. Simpson; Hon. Alan C. Stephens, District Judges.

Judgment of conviction for possession of a controlled substance, <u>affirmed</u>.

Eric D. Fredericksen, State Appellate Public Defender; Brian R. Dickson, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Kacey L. Jones, Deputy Attorney General, Boise, for respondent.

---

BRAILSFORD, Judge

April Dawn Ramos appeals from her judgment of conviction for possession of a controlled substance in violation of Idaho Code § 37-2732(c). Ramos argues the district court erred in denying her motion to suppress evidence obtained following an investigatory detention. We affirm.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

While patrolling in Blackfoot in September 2019, Officer Henrie observed a vehicle traveling 37 mph in a 30-mph zone and initiated a traffic stop. The driver of the vehicle, Ramos, signaled with her blinker and began to pull to the side of the roadway. Officer Henrie observed Ramos drive the vehicle onto and off of the sidewalk curb along the roadway one time before

1

bringing it to a complete stop. As Officer Henrie approached the vehicle, he noticed that Ramos' upper body was leaning toward the open driver's window; both of her hands were outside the window; and one of her hands was shaking.[1] Finding this behavior unusual, Officer Henrie, a trained Drug Recognition Expert (DRE), radioed for backup.

As Officer Henrie neared the vehicle, he heard Ramos "uttering about why she ran into the curb." Once Officer Henrie reached the vehicle's window, he shined his flashlight into Ramos' eyes, and her pupils reacted slowly to the light. Based on Officer Henrie's experience and training, this slow reaction indicated the possible use of stimulants. Officer Henrie asked Ramos to provide her license, registration, and proof of insurance. While Ramos looked for her information, Officer Henrie asked Ramos a few questions, and he noticed she stopped looking for her information to answer his questions, suggesting an inability to multitask. Also, before this traffic stop, Officer Henrie had previously interacted with Ramos "a handful of times" while she was "both sober and impaired." During the traffic stop, he observed Ramos speaking faster, and generally being more talkative than when sober. Although Ramos provided her license, she was unable to provide registration and admitted she was trying to get her insurance reinstated.

Based on his observations up to this point, Officer Henrie asked Ramos to step out of the vehicle, and he proceeded to conduct field sobriety tests. During the field sobriety tests, another officer arrived with a drug-sniffing dog, deployed the dog on the vehicle, and the dog alerted. Simultaneously, Officer Henrie was finishing the field sobriety tests with Ramos and informing her that he would review her driving record to determine what citation he might issue. Based on the dog's alert, a subsequent search of the vehicle revealed methamphetamine and drug paraphernalia.

As a result of this encounter, the State charged Ramos with felony possession of a controlled substance, I.C. § 37-2732(c)(1), and misdemeanor unlawful possession of drug paraphernalia, I.C. § 37-2734A(1). Ramos filed a motion to suppress the evidence obtained during and after the field sobriety tests and from the search of the vehicle, arguing Officer Henrie lacked reasonable suspicion to conduct field sobriety tests and impermissibly prolonged the stop by conducting those tests. At the evidentiary hearing on the suppression motion, Officer Henrie testified and the videos from his body and dash cameras were admitted in evidence. In addition

---

[1] Based on a review of the video from Officer Henrie's body camera, the district court found Ramos was rapidly and repeatedly flicking a cigarette butt.

to the facts set forth above, Officer Henrie testified that Ramos drove onto the curb a second time but that he only noticed the second time when watching the video during the hearing. Officer Henrie also testified that Ramos' pupils never fully constricted during the field sobriety tests.

The district court denied Ramos' suppression motion, concluding Officer Henrie had reasonable suspicion to conduct field sobriety tests and did not illegally prolong the stop. In its written findings of fact, the court included two facts not known to Officer Henrie at the time he decided to conduct the field sobriety tests: (1) Ramos drove the vehicle onto and off of the curb a second time before coming to a complete stop, and (2) Ramos' pupils never fully constricted during the field sobriety tests. Ramos subsequently pled guilty conditionally to possession of a controlled substance and reserved her right to appeal the denial of her suppression motion. Ramos timely appeals.

## II.

## STANDARD OF REVIEW

The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999). The trial court's determination of reasonable suspicion, however, is reviewed de novo. *State v. Bonner*, 167 Idaho 88, 93, 467 P.3d 452, 457 (2020).

## III.

## ANALYSIS

On appeal, Ramos argues the district court erred in denying her suppression motion because it considered facts not known to Officer Henrie at the time he decided to conduct field sobriety tests to conclude he had reasonable suspicion to perform those tests. Specifically, Ramos argues the court erred by considering that Ramos struck the curb a second time and that her pupils did not fully constrict during the field sobriety tests. Ramos, however, does not challenge any of the remaining facts or circumstances known to Officer Henrie at the time he

3

decided to conduct the field sobriety tests. The State argues Officer Henrie had reasonable suspicion under the totality of the circumstances, even if the challenged facts are excluded.

A traffic stop by an officer constitutes a seizure of the vehicle's occupants and implicates the Fourth Amendment's prohibition against unreasonable searches and seizures. *Delaware v. Prouse*, 440 U.S. 648, 653 (1979); *Atkinson*, 128 Idaho at 561, 916 P.2d at 1286. Under the Fourth Amendment, an officer may stop a vehicle to investigate possible criminal behavior if there is a reasonable and articulable suspicion that the vehicle is being driven contrary to traffic laws. *United States v. Cortez*, 449 U.S. 411, 417 (1981); *State v. Flowers*, 131 Idaho 205, 208, 953 P.2d 645, 648 (Ct. App. 1998). The reasonableness of the suspicion must be evaluated upon the totality of the circumstances at the time of the stop. *State v. Ferreira*, 133 Idaho 474, 483, 988 P.2d 700, 709 (Ct. App. 1999). The reasonable suspicion standard requires less than probable cause but more than mere speculation or instinct on the part of the officer. *Id*. An officer may draw reasonable inferences from the facts in his or her possession, and those inferences may be drawn from the officer's experience and law enforcement training. *State v. Montague*, 114 Idaho 319, 321, 756 P.2d 1083, 1085 (Ct. App. 1988). In the context of traffic stops, authority for the seizure ends when the tasks related to the infraction are, or reasonably should have been, completed. *Rodriguez v. United States*, 575 U.S. 348, 354 (2015); *State v. Linze*, 161 Idaho 605, 609, 389 P.3d 150, 154 (2016).

During the course of a traffic stop, however, an officer may develop reasonable suspicion of other criminal activity, and based on this new reasonable suspicion, the officer may lawfully investigate that activity. *Linze*, 161 Idaho at 609, 389 P.3d at 154; *State v. Renteria*, 163 Idaho 545, 550, 415 P.3d 954, 959 (Ct. App. 2018). For example, an officer may conduct field sobriety tests during a lawful traffic stop if the officer has reasonable suspicion that a person is driving while under the influence. *Ferreira*, 133 Idaho at 479-81, 988 P.2d at 705-07; *State v. Buell*, 145 Idaho 54, 56, 175 P.3d 216, 218 (Ct. App. 2008). Whether an officer possessed reasonable suspicion is evaluated based on the totality of the circumstances known to the officer *at or before* the time of the field sobriety tests. *State v. Bishop*, 146 Idaho 804, 811, 203 P.3d 1203, 1210 (2009).

Ramos does not dispute Officer Henrie had reasonable suspicion to stop her for a traffic violation because she was exceeding the speed limit. Rather, she only disputes Officer Henrie had reasonable suspicion sufficient to conduct field sobriety tests. Based on the totality of

4

circumstances known to Officer Henrie at the time he decided to conduct field sobriety tests, we hold he had reasonable suspicion that Ramos was driving while under the influence.

Officer Henrie testified to specific and articulable facts that, when taken together with reasonable inferences, raise reasonable suspicion that Ramos was driving under the influence. These facts include that Ramos was speeding; she drove onto the curb when pulling over; she was leaning out her window and talking as Officer Henrie approached the vehicle; she continued to talk rapidly; her pupils were dilated and slow to react to the light; and she was unable to multitask. Additionally, Officer Henrie was familiar with Ramos' demeanor while sober but observed her demeanor during the traffic stop was "completely different from when she's sober." Based on his training and experience as a DRE, Officer Henrie found Ramos' behavior indicative of stimulant use and decided to conduct field sobriety tests. Under the totality of these facts, the district court did not err by concluding that Officer Henrie had reasonable suspicion to conduct field sobriety tests on Ramos.

## IV.
## CONCLUSION

The district court did not err by denying Ramos' suppression motion. Accordingly, we affirm Ramos' judgment of conviction.

Chief Judge HUSKEY and Judge GRATTON **CONCUR**.