**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 48503**

| | |
|---|---|
| STATE OF IDAHO,<br><br>    Plaintiff-Respondent,<br><br>v.<br><br>MICHELLE RENE DESCHARME,<br><br>    Defendant-Appellant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Filed: September 15, 2022

Melanie Gagnepain, Clerk

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Jonathan Medema, District Judge.

Judgment of conviction for trafficking in methamphetamine or amphetamine and misdemeanor driving under the influence, vacated.

Eric D. Fredericksen, State Appellate Public Defender; Sally J. Cooley, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Mark W. Olson, Deputy Attorney General, Boise, for respondent.

_____

LORELLO, Chief Judge

Michelle Rene Descharme appeals from her judgment of conviction for trafficking in methamphetamine or amphetamine and misdemeanor driving under the influence (DUI). We hold that Descharme's motion to suppress should have been granted because she was arrested for a misdemeanor DUI committed and completed outside the officer's presence. Accordingly, we vacate Descharme's judgment of conviction.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

Officers responded to the location of a parked semi-truck and trailer that reportedly had been swerving in and out of its lane while traveling on the interstate, causing other vehicles to swerve to avoid a potential collision. When the officers arrived, Descharme was standing outside

1

the semi-truck. In response to the officers' questions, Descharme indicated that she had been driving the semi-truck. While one officer continued conversing with Descharme and obtained her consent to field sobriety testing, a second officer spoke with the citizen who reported the semi-truck and followed it from the interstate. The citizen described what he had seen while following the semi-truck and, when asked, indicated that he was willing to place Descharme under citizen's arrest if further investigation revealed she was "under the influence." When field sobriety testing indicated Descharme was impaired, officers handcuffed her, gave her *Miranda*[1] warnings, and transported her to the local police station for evidentiary testing. At the station, Descharme consented to further evidentiary testing. When taken to the bathroom to provide a urine sample, the female officer accompanying Descharme observed a bottle fall from Descharme's shorts. Descharme admitted that the bottle contained "clean" urine in case she needed to submit to a urine test, and she admitted she used methamphetamine the previous night.

After transporting Descharme to the police station, officers contacted the owner of the semi-truck and informed him of its location. When the owner retrieved the semi-truck, he found a purse on the floor of the cab, which he subsequently delivered to officers. An inventory search of the purse yielded drug paraphernalia and a plastic container of methamphetamine. When questioned about the container, Descharme admitted to purchasing a half-pound of methamphetamine in California, to splitting it with other individuals, and to having three-quarters of an ounce of methamphetamine left.

The State charged Descharme with trafficking in methamphetamine, possession of drug paraphernalia, resisting or obstructing officers, and misdemeanor driving under the influence. Descharme filed a motion to suppress, arguing (among other things) that she was unlawfully arrested when officers handcuffed her. The district court denied the motion, concluding (as pertinent to this appeal) that Descharme "effectively" consented to being transported to the police station. Descharme then entered a conditional guilty plea to trafficking in methamphetamine, I.C. § 37-2732B(a)(4)(A), and misdemeanor DUI, I.C. § 18-8004, reserving the right to appeal the denial of her motion to suppress. In exchange for Descharme's guilty pleas, the State agreed to

---

[1] *See Miranda v. Arizona*, 384 U.S. 436 (1966).

2

dismiss the possession of drug paraphernalia and resisting or obstructing charges. Descharme appeals.

## II.

## STANDARD OF REVIEW

The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999).

## III.

## ANALYSIS

Descharme argues that the district court erred by denying her motion to suppress because she was subject to a de facto arrest that was unlawful under *State v. Clarke*, 165 Idaho 393, 446 P.3d 451 (2019), which tainted the evidence obtained as a result of the arrest.[2] The State responds that the district court correctly concluded that Descharme's seizure did not evolve into a de facto arrest because officers used reasonable methods to effectuate Descharme's implied consent to evidentiary testing under I.C. § 18-8002 during an investigatory detention and then developed probable cause at the police station to arrest her for other offenses. We hold that handcuffing Descharme and transporting her to the police station for evidentiary testing constituted a de facto arrest. Because that arrest was for a misdemeanor completed outside the presence of officers, it violated the Idaho Constitution as interpreted by the Idaho Supreme Court. Consequently, Descharme's motion to suppress should have been granted.

---

[2] Approximately two months after filing her appellant's brief, Descharme filed a "Letter of Errata" to "clarify her position on appeal," noting that she "maintains and preserves the arguments she made to the district court." An appellant's arguments must be raised in the opening brief. *See* I.A.R. 35(a)(6). We decline to consider arguments raised in a letter.

On appeal, Descharme does not argue that officers lacked sufficient justification to detain and investigate her for DUI. Rather, Descharme contends that she was de facto arrested when, "after failing to pass the field sobriety testing, she was handcuffed, read her *Miranda* rights, and transported to the police department."[3] Where a person is detained, the scope of the detention must be carefully tailored to its underlying justification. *State v. Roe*, 140 Idaho 176, 181, 90 P.3d 926, 931 (Ct. App. 2004); *State v. Parkinson*, 135 Idaho 357, 361, 17 P.3d 301, 305 (Ct. App. 2000). In this regard, we must focus on the intensity of the detention, as well as its duration. *Roe*, 140 Idaho at 181, 90 P.3d at 931. Whether the Fourth Amendment is violated during the course of an investigatory detention is not automatically answered by the assessment of whether police tactics did or did not amount to a "de facto" arrest. *State v. Stewart*, 145 Idaho 641, 645, 181 P.3d 1249, 1253 (Ct. App. 2008). Rather, the relevant question is whether the detention was reasonable. *Id.* Factors to be considered when evaluating the totality of the circumstances include the seriousness of the crime or crimes under investigation, the location and length of the detention, the reasonableness of the display of force by officers, and the conduct of the suspect while the encounter unfolds. *See State v. Martinez*, 129 Idaho 426, 431, 925 P.2d 1125, 1130 (Ct. App. 1996). If the detention is not reasonable under the circumstances, the seizure constitutes a de facto arrest that must comport with applicable statutory and constitutional standards.

The district court determined that, based upon the facts the citizen articulated to officers about Descharme and the semi-truck's driving pattern, officers could lawfully detain her "to confirm that she was driving . . . and determine if [she] was impaired by conducting the field sobriety tests." When considering whether officers later unlawfully arrested Descharme, the

---

[3] Although Descharme contends that this de facto arrest violated her rights under Article I, Section 17 of the Idaho Constitution, she provides no cogent reason why the Idaho Constitution should be applied differently than the Fourth Amendment to the United States Constitution to determine whether such an arrest occurred. That is, Descharme does not argue that the Idaho Constitution and Fourth Amendment establish different standards for determining whether a de facto arrest occurred. Therefore, the Court will rely on judicial interpretation of the Fourth Amendment to analyze Descharme's claim that she was subject to a de facto arrest. *See State v. Schaffer*, 133 Idaho 126, 130, 982 P.2d 961, 965 (Ct. App. 1999).

district court acknowledged that the critical inquiry is whether officers exceeded the lawful scope of an investigative detention. To that end, the district court observed:

> Normally, the police binding someone's hands together and taking the person to a place she does not want to go would certainly amount to an arrest. Here, however, [Descharme] consented to such things. By consenting to undergo the evidentiary testing required under I.C. § 18-8004, she necessarily also consented to being taken to the place where such evidentiary testing could be performed.

In reaching this conclusion, the district court noted that any person driving a motor vehicle on property open to the public is deemed to have consented to evidentiary testing at the request of officers who have reasonable grounds to believe the person has been driving in violation of I.C. § 18-8004. The district court reasoned that Descharme's implied consent to evidentiary testing under I.C. § 18-8002 "necessarily involved being transported to the police station" for such testing because "the appropriate equipment" for the testing was unavailable where officers initially encountered her. Thus, according to the district court, Descharme "effectively . . . consented to being transported to the police station" for evidentiary testing and "that she was handcuffed during the car ride, simply as a matter of routine to ensure officer's safety, did not transform that car ride into an arrest." Consequently, the district court concluded Descharme's transport to the police station in a patrol vehicle while handcuffed was reasonable under the Fourth Amendment.

The district court further concluded that officers developed probable cause to arrest Descharme for possession of a controlled substance after transporting her to the police station. The district court reasoned that Descharme's admission, while at the police station, to using methamphetamine the previous night gave officers "probable cause to believe [Descharme] violated I.C. § 37-2732(c) the day before." Because possessing methamphetamine in violation of I.C. § 37-2732(c) is a felony, the district court determined that Descharme's arrest at the police station for that offense was reasonable under both the United States and Idaho Constitutions.[4]

---

[4] The district court further rejected the State's argument that Descharme had been placed under a citizen's arrest by the citizen who reported the semi-truck. The State does not challenge this conclusion on appeal. The district court also expressly declined to address the State's argument that officers could lawfully arrest Descharme at the police station for resisting and obstructing officers when she dropped the bottle in the bathroom. The State advances this same argument on appeal, which we address below.

5

Descharme challenges the district court's conclusions that she "effectively . . . consented to being transported to the police station to undergo breath testing" and that her "routine" handcuffing for transport did not constitute an arrest. Warrantless searches and seizures conducted pursuant to an individual's consent do not violate the Fourth Amendment. *See State v. Purdum*, 147 Idaho 206, 208, 207 P.3d 182, 184 (2009). However, the search or seizure actually conducted cannot exceed the scope of the consent given. *State v. Thorpe*, 141 Idaho 151, 154, 106 P.3d 477, 480 (Ct. App. 2004). To determine the scope of the consent given, courts apply a standard of objective reasonableness, asking what a typical reasonable person would have understood to be within scope. *State v. Ballou*, 145 Idaho 840, 849, 186 P.3d 696, 705 (Ct. App. 2008).

Descharme contends that a reasonable person would not understand the implied consent arising from I.C. § 18-8002 to also entail an implied consent to handcuffing and transport to a police station. We agree. Determining the scope of the implied consent provided under I.C. § 18-8002 is a question of statutory interpretation. This entails consideration of the statutory text with the ultimate goal of discerning and effecting the legislature's intent. *See State v. Schulz*, 151 Idaho 863, 866, 264 P.3d 970, 973 (2011). If the text of the statute is unambiguous, it must be applied according to its plain terms. *State v. Escobar*, 134 Idaho 387, 389, 3 P.3d 65, 67 (Ct. App. 2000). Idaho Code Section 18-8002 provides, in pertinent part:

> Any person who drives or is in actual physical control of a motor vehicle in this state shall be deemed to have given his [or her] consent to evidentiary testing for concentration of alcohol as defined in section 18-8004, Idaho Code, and to have given his [or her] consent to evidentiary testing for the presence of drugs or other intoxicating substances, provided that such testing is administered at the request of a peace officer having reasonable grounds to believe that person has been driving or was in actual physical control of a motor vehicle in violation of the provisions of section 18-8004 or 18-8006, Idaho Code.

The above statutory text unambiguously deems those driving or in actual physical control of motor vehicles to have consented only to evidentiary testing. The statute does not mention consent to seizures incidental to effecting the contemplated evidentiary testing. Notably, the Idaho Supreme Court has, in a somewhat different context, inferred a consent to limited seizures from an express consent to searches. *See Purdum*, 147 Idaho at 208, 207 P.3d at 184 (holding a probationer impliedly consented to "limited seizure of his person necessary to effectuate" a probation condition authorizing random blood, breath, or urinalysis testing). We cannot do so here

6

for two reasons. First, *Purdum* involved a court-imposed probation condition requiring the probationer to consent to random evidentiary testing. Even if an absurd result ensues, we cannot interpret a statute, like I.C. § 18-8002, as including an implied consent to seizures absent from the statutory text. *See State v. Osborn*, 165 Idaho 627, 631, 449 P.3d 419, 423 (2019) (observing that courts have not revised statutes to avoid even patently absurd results). Second, the Court in *Purdum* reasoned that the evidentiary testing condition would be a nullity if officers could not temporarily detain the probationer to conduct the testing. *See Purdum*, 147 Idaho at 210, 207 P.3d at 186. Interpreting I.C. § 18-8002 as not including an implied consent to those seizures deemed necessary to effect evidentiary testing will not render the statute a nullity. An officer with probable cause to believe an individual has committed felony DUI or misdemeanor DUI in the officer's presence may arrest and transport the individual to a police station without a warrant. *See* I.C. § 19-603. Even in cases where an individual is suspected of misdemeanor DUI completed outside an officer's presence, officers may arrest and transport the individual to a police station after obtaining an arrest warrant. Accordingly, we conclude that Descharme's implied consent to evidentiary testing under I.C. § 18-8002 did not include an additional implied consent to being handcuffed and transported to the police station for purposes of conducting evidentiary testing.

This conclusion does not end our inquiry. We must next address the State's argument that, regardless of the scope of Descharme's implied consent, handcuffing and transporting Descharme to the police station were reasonable means of effecting her implied consent to evidentiary testing and, therefore, did not constitute an unreasonable seizure or de facto arrest. According to the State, this is so because of the seriousness of the crime being investigated combined with "Descharme's implied consent to evidentiary testing, the necessity of transport to perform testing, the exigency of dissipating blood [alcohol concentration], and a consideration of the legitimate officer interests involved." In further support of this argument, the State cites cases from other jurisdictions holding that some movement of a suspect in the general vicinity of an initial detention does not necessarily transform an investigative detention into an arrest. *See, e.g.*, *United States v. White*, 584 F.3d 935, 952-56 (10th Cir. 2009); *United States v. Charley*, 396 F.3d 1074, 1080 (9th Cir. 2005).

Descharme asserts that "the facts of [her] case are indistinguishable from those in" *Reagan v. Idaho Transp. Dep't*, 169 Idaho 689, 502 P.3d 1027 (2021), and compel a conclusion that she

7

was arrested upon being handcuffed.[5]  In *Reagan*, the Idaho Supreme Court addressed a claim that officers unlawfully arrested a defendant for a completed misdemeanor DUI.  An officer responded to Reagan's residence after receiving a report of a potentially intoxicated female driving a vehicle registered to Reagan.  When questioned by an officer, Reagan admitted consuming alcohol and driving.  Reagan then submitted to field sobriety testing, which indicated she was impaired.  The officer handcuffed Reagan and placed her in the back of a patrol vehicle, informing her that she was under arrest.  Subsequent breath testing indicated that Reagan's blood alcohol concentration exceeded the legal limit, which led to the suspension of Reagan's driver's license under I.C. § 18-8002A.  Reagan sought judicial review of the suspension.

On appeal, the Idaho Supreme Court affirmed the district court's decision vacating the one-year license suspension.  *Reagan*, 169 Idaho at 700, 502 P.2 at 1038.  Regarding the officer's use of handcuffs, the Court stated that "the threshold for showing that handcuffs were a reasonable precaution for officer safety is high," and noted the absence of circumstances indicating Reagan posed a safety threat.  *Id.* at 697, 502 P.3d at 1035.   The Court also noted that Reagan complied with the officer's requests, appeared to be unarmed, and was suspected of a nonviolent offense that the officer had not witnessed.  The Court reasoned that, considering the totality of the circumstances, "the act of handcuffing Reagan exceeded the bounds of what was reasonably intrusive in conducting an investigative detention" and constituted an arrest.  *Id.*   Thus, the Court concluded that Reagan was arrested without a warrant for a misdemeanor DUI committed outside an officer's presence in violation of the Idaho Constitution.   *Id.* at 698, 502 P.2d at 1036.  Consequently, the Court held that, "because the breath test on which the [Idaho Transportation Department] based Reagan's license suspension violated constitutional standards, the district court correctly vacated her license suspension."  *Id.* at 700, 502 P.2d at 1038.

However, contrary to Descharme's argument, while *Reagan* is instructive, it does not control our decision.  The evidentiary testing at issue in *Reagan* did not ostensibly require transport to another location.  Instead, the officer conducted Reagan's breath test in the back seat of a patrol vehicle parked at Reagan's home.  Here, the district court found that Descharme's transport to the

---

[5]    The Idaho Supreme Court's opinion in *Reagan* was issued after entry of Descharme's judgment of conviction for the offenses at issue in this case.  Thus, the district court did not have the benefit of *Reagan* when adjudicating Descharme's motion to suppress.

8

police station was necessary because "the appropriate equipment" to conduct the evidentiary testing to which she impliedly consented and actually submitted was unavailable at the scene of her initial encounter with officers.

It is generally accepted that moving a suspect a short distance from the location of the initial confrontation with police is permissible on less than probable cause. *See, e.g.*, *White*, 584 F.3d at 952-56; *Charley*, 396 F.3d at 1080; 4 WAYNE R. LAFAVE, SEARCH & SEIZURE § 9.2(g) at 348 (4th ed. 2004). However, officers must conduct investigatory detentions using the least intrusive means reasonably available. *Reagan*, 169 Idaho at 697, 502 P.3d at 1035. Moreover, the United States Supreme Court has noted that the involuntary transport of a suspect to a police station for investigative purposes sufficiently resembles a formal arrest such that it exceeds the permissible scope of an investigatory detention and, therefore, require probable cause or judicial authorization. *See, e.g.*, *Hayes v. Florida*, 470 U.S. 811, 816 (1985).

Even if some testing equipment was located at the police station, it does not necessarily follow that Descharme's transport to that equipment was the least intrusive means necessary to conduct evidentiary testing. *See Roe*, 140 Idaho at 181, 90 P.3d at 931 (requiring an investigatory detention to be temporary and last no longer than necessary to effectuate the purpose of the stop). Under I.C. § 18-8002, officers may choose whether a breath, urine, or blood test will be taken. *State v. Griffiths*, 113 Idaho 364, 370, 744 P.2d 92, 98 (1987). The record shows that Descharme submitted to all three forms of testing at the police station. When breath testing indicated that Descharme had a .000 blood alcohol concentration, fire department personnel attempted to draw a sample of her blood and, when that was unsuccessful, a urine sample was collected. Even if the police station was the only location officers could access equipment to collect a sample of Descharme's breath, the record does not indicate why her presence at the police station was even a reasonable means of expediting the evidentiary testing relative to available alternatives. In light of the above and considering the totality of the circumstances, we hold that Descharme's transport to the police station while handcuffed constituted a de facto warrantless arrest.[6] Because the

---

[6] We express no opinion regarding the lawfulness of limited seizures based upon less than probable cause to effect evidentiary testing at locations other than a police station, depending on the circumstances.

9

warrantless arrest was based upon probable cause of a misdemeanor DUI completed outside an officer's presence, the arrest was unlawful under the Idaho Constitution. *See Reagan*, 169 Idaho at 696, 502 P.3d at 1034; *Clarke*, 165 Idaho at 399, 446 P.3d at 457. Accordingly, Descharme's motion to suppress should have been granted.[7]

## IV.

## CONCLUSION

Transporting Descharme to the police station in handcuffs for purposes of evidentiary testing constituted a de facto arrest for a misdemeanor completed outside the officer's presence. Thus, Descharme's motion to suppress should have been granted. Consequently, we vacate Descharme's judgment of conviction for trafficking in methamphetamine or amphetamine and driving under the influence.

Judge GRATTON and Judge BRAILSFORD, **CONCUR**.

---

[7] The State further argues that officers developed probable cause to arrest Descharme for willfully resisting, delaying, or obstructing officers in the discharge of their duties (a violation of I.C. § 18-705) when the bottle fell from Descharme's shorts during urinalysis testing and possession of a controlled substance (a violation of I.C. § 37-2732) when she admitted using methamphetamine the previous night. The State does not, however, contend that this alleged criminal conduct could support an exception to the exclusionary rule for a prior unlawful seizure. To the contrary, the State concedes that *if* the officers unlawfully arrested Descharme, the search of her purse was also unlawful. Consequently, because officers exceeded the scope of an investigatory detention, we need not address the State's arguments that officers developed probable cause to arrest for other offenses at the police station or Descharme's arguments that no exception to the exclusionary rule applies.