**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 50355**

| | |
|---|---|
| STATE OF IDAHO, | ) |
| | ) **Filed: September 19, 2024** |
| Plaintiff-Respondent, | ) |
| | ) **Melanie Gagnepain, Clerk** |
| v. | ) |
| | ) **THIS IS AN UNPUBLISHED** |
| JOHN RANDAL CENARRUSA, | ) **OPINION AND SHALL NOT** |
| | ) **BE CITED AS AUTHORITY** |
| Defendant-Appellant. | ) |
| | ) |

Appeal from the District Court of the Fifth Judicial District, State of Idaho, Blaine County. Hon. Ned C. Williamson, District Judge.

Judgment of conviction for felony driving under the influence, <u>affirmed</u>.

Erik R. Lehtinen, State Appellate Public Defender; Jenny C. Swinford, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Raúl R. Labrador, Attorney General; Justin R. Porter, Deputy Attorney General, Boise, for respondent.

---

TRIBE, Judge

John Randal Cenarrusa appeals from his judgment of conviction for felony driving under the influence (DUI). Cenarrusa argues the district court erred in denying his motion to suppress. We affirm.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

An Idaho State Police trooper was driving to training when he noticed a vehicle had driven off the road and collided with a tree in the front yard of a residence. The trooper made contact with the driver who he identified as Cenarrusa. The trooper then placed a radio call asking for local law enforcement to assist. Two Blaine County deputies arrived, a training deputy and the supervising deputy. The trooper told the training deputy that he had Cenarrusa perform standard field sobriety tests but had not detained him for DUI. The trooper then left the scene. The deputies

1

had Cenarrusa repeat the standard field sobriety tests in their presence and the training deputy determined that Cenarrusa met all the decision points for a DUI arrest. Cenarrusa was searched for weapons and contraband. After finding none, the training officer then handcuffed Cenarrusa and placed him in the back of the patrol car to facilitate breath testing, including the mandatory waiting period. The supervising deputy informed Cenarrusa that unless the DUI is a felony, he will be released regardless of the breath test sample results. Cenarrusa provided a breath test sample of .09/.09. Cenarrusa remained handcuffed while the training deputy checked for prior DUI convictions. That records check revealed that Cenarrusa had five prior DUI convictions since 2008, rendering this DUI a felony. Consequently, Cenarrusa was arrested for and charged with felony DUI. Idaho Code §§ 18-8004 and 18-8005(9). Cenarrusa filed a motion to suppress the results of the breath test, arguing that the samples had been obtained during a de facto arrest for a misdemeanor DUI in violation of the Idaho Constitution as interpreted by the Idaho Supreme Court in *State v. Clarke*, 165 Idaho 393, 446 P.3d 451 (2019). The training deputy testified at the hearing on the suppression motion. The district court denied the motion to suppress, finding the investigative detention was reasonable and the circumstances did not amount to a de facto arrest. Cenarrusa entered a conditional plea of guilty to felony DUI, reserving his right to appeal the district court's denial of his motion to suppress. Cenarrusa appeals.

## II.

### STANDARD OF REVIEW

The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999).

# III.

## ANALYSIS

Cenarrusa argues that the district court erred in denying his motion to suppress evidence, alleging the deputy went beyond the scope of what was reasonable for an investigatory detention by handcuffing him and placing him in the patrol car. Cenarrusa argues this action by the officer made the encounter a de facto arrest for a misdemeanor DUI without a warrant in violation of *Clarke*. The State argues that Cenarrusa was not subject to a de facto arrest and therefore *Clarke* does not apply. The district court found that the encounter amounted to an investigatory detention, not a de facto arrest. We hold that *Clarke* is inapplicable to de facto arrests. As such, Cenarrusa's reliance on *Clarke* is misplaced and he has failed to show the district court erred in denying his motion to suppress. Insofar as Cenarrusa argues the actions taken by the officer were unreasonable and the evidence of his breath tests should be excluded as a result, we disagree.

We first address Cenarrusa's assertion that *Clarke* applies to de facto arrests and requires exclusion of evidence in this case. In *Clarke*, an individual reported to law enforcement that she had been harassed and groped by a man earlier in the day. The individual described what occurred, provided a description of the man who accosted her, and advised the officer she wished to press charges. Not long after, the officer found the suspect, later identified as Clarke. Clarke spoke with the officer and admitted to talking to and grabbing the individual in the way she described but maintained the touching was consensual. Based on the individual's complaint and Clarke's confirmation that the reported touching occurred, the officer arrested Clarke for misdemeanor battery. During a search incident to Clarke's arrest, the officer discovered drug paraphernalia; marijuana; and several small chunks of a white crystalline substance, later identified as methamphetamine. The State charged Clarke with felony possession of methamphetamine, misdemeanor possession of marijuana, misdemeanor possession of paraphernalia, and misdemeanor battery.

Prior to trial, Clarke filed a motion to suppress, contending there was neither a constitutional nor a statutory basis upon which he could have been arrested. Clarke argued that, as a result, his arrest was unlawful, and the contraband obtained during the search incident to his arrest was fruit of the poisonous tree subject to suppression. The district court held a hearing on the motion and found that probable cause existed for Clarke's arrest. The district court also found

the arrest permissible pursuant to both the state and federal constitutions as well as pursuant to I.C. § 19-603(6), which governs when an officer can arrest. Clarke appealed, challenging the denial of his motion to suppress and arguing an arrest for a misdemeanor committed outside an officer's presence is unconstitutional.

The Idaho Supreme Court held that the Idaho Constitution prohibits warrantless arrests for a completed misdemeanor, which it defined as one "no longer in progress when the officer arrives on the scene." *Clarke*, 165 Idaho at 396 n.6, 446 P.3d at 454 n.6. The Court began by discussing the conflicting standards governing warrantless arrests in Idaho. The Court noted that Article I, Section 17 of the Idaho Constitution has long been interpreted with I.C. § 19-603 and its predecessor statutes, which were in place when the Idaho Constitution was adopted. *Clarke*, 165 Idaho at 396, 446 P.3d at 454. The Court explained that, "until 1979, the interpretation of the Constitution and the statutes that preceded" I.C. § 19-603 "largely echoed the general rule of federal cases--that a warrantless arrest was lawful if the arresting officer had probable cause to believe a felony had been committed or if the offender had committed a misdemeanor in the presence of the officer." *Clarke*, 165 Idaho at 396, 446 P.3d at 454. However, with the addition of subsection (6) to I.C. § 19-603, the constitutional standard and the statutory standard diverged. While the constitutional standard continued to mirror the general rule of federal cases, I.C. § 19-603(6) provided that, when there is probable cause to believe certain misdemeanors were committed outside the presence of an officer (e.g., in a domestic violence situation), a warrantless arrest is lawful. *Clarke*, 165 Idaho at 396, 446 P.3d at 454. After reviewing the common law at the time of the Idaho Constitution's adoption and examining the laws of other states before Idaho's constitutional convention, the Court determined that the framers understood Article I, Section 17 to prohibit warrantless arrests for completed misdemeanors, including the misdemeanors set forth in I.C. § 19-603(6). *Clarke*, 165 Idaho at 397-400, 446 P.3d at 455-58. Thus, the Court determined that I.C. § 19-603(6) "must yield to the requirements of the Idaho Constitution." *Clarke*, 165 Idaho at 400, 446 P.3d at 458.

*Clarke* has no express application to de facto arrests, nor is there any reasoned basis to extend *Clarke*'s reach to de facto arrests. The de facto arrest doctrine arose from cases addressing the constitutional parameters of investigatory detentions pursuant to *Terry v. Ohio*, 392 U.S. 1 (1968). Under *Terry*, the Supreme Court adopted a dual inquiry for evaluating the reasonableness

4

of such a detention. This inquiry includes consideration of whether the detention was justified at its inception and whether the officer's actions were reasonably related in scope to the purpose of the detention. *Id*. at 20. As to the latter part of the inquiry, the Supreme Court has stated that law enforcement's investigation must be diligent and the detention must not be prolonged longer than necessary to confirm or dispel the suspicion that warranted the detention in the first instance. *See United States v. Sharpe*, 470 U.S. 675, 685 (1985). If the length of an investigatory detention authorized by *Terry* exceeds what is reasonable under the circumstances, the detention is transformed into a de facto arrest that must be supported by more than reasonable suspicion, i.e., probable cause. *See Sharpe*, 470 U.S. at 685; *see also State v. Buti*, 131 Idaho 793, 796-97, 964 P.2d 660, 663-64 (1998). The Supreme Court recognized that the determination of when and whether an investigatory detention transforms into a de facto arrest can "create difficult line-drawing problems," particularly given that there is "no rigid time limitation on *Terry* stops." *Sharpe*, 470 U.S. at 685. "Much as a 'bright line' rule would be desirable, in evaluating whether an investigative detention is unreasonable, common sense and ordinary human experience must govern over rigid criteria." *Id.*

Nothing in *Clarke* implicates the de facto arrest jurisprudence. The facts of *Clarke* involved an actual arrest and the Court's analysis centered on whether such an arrest was constitutionally permissible "for a misdemeanor offense that occurred outside [the officer's] presence but for which probable cause exists." *Clarke*, 165 Idaho at 396, 446 P.3d at 454. Thus, the Court's analysis was predicated on the existence of probable cause in the first instance such that there was no reason for the Court to consider whether the detention exceeded the scope of what is permissible if it was based only on reasonable suspicion. In short, the existence of probable cause forecloses any need to assess whether law enforcement's conduct exceeds the scope of an investigatory detention such that a de facto arrest occurred. Moreover, the primary statute analyzed by the Court in *Clarke*--I.C. § 19-603--governs actual arrests as do the surrounding statutes in Title 19, Chapter 6. *See*, *e.g.*, I.C. § 19-601 (defining arrest as "taking a person into custody in a case and in the manner authorized by law"); I.C. § 19-602 (defining how an arrest may be made); I.C. § 19-603 (defining when an offer may arrest, including arrests pursuant to a warrant) I.C. § 19-615 (requiring an arrested person to be "taken before the nearest or most accessible magistrate in the county in which the arrest is made"). *Clarke* does not implicitly or explicitly support the

5

proposition Cenarrusa advocates. To the contrary, including de facto arrests within *Clarke*'s reach would allow a post-hoc analysis of whether an investigatory detention evolved into a de facto arrest, which would introduce unwarranted uncertainty into what is *Clarke*'s otherwise clear directive--an individual cannot be arrested for a misdemeanor committed outside the officer's presence.

Although our opinion in *State v. Descharme*, 171 Idaho 533, 523 P.3d 493 (Ct. App. 2022) cited *Clarke*, a review of our opinion in *Descharme* reveals that our analysis was not dependent on a de facto arrest analysis. In *Descharme*, officers responded to the location of a parked semi-truck that reportedly had been swerving in and out of its lane while traveling on the interstate. When officers arrived, Descharme was standing outside the semi-truck. Responding to the officer's questions, Descharme indicated that she had been driving the semi-truck. The officer then obtained Descharme's consent to conduct field sobriety testing. When field sobriety testing indicated Descharme was impaired, officers handcuffed her, gave her *Miranda*[1] warnings, and transported her to the local police station for evidentiary testing. At the station, Descharme consented to further evidentiary testing. When taken to the bathroom to provide a urine sample, the female officer accompanying Descharme observed a bottle fall from her shorts. Descharme admitted the bottle contained "clean" urine in case she needed to submit to a urine test, and she admitted she used methamphetamine the previous night. Additionally, an inventory search of a purse found in the semi-truck yielded drug paraphernalia and a plastic container of methamphetamine. When questioned about the container, Descharme admitted to purchasing a half-pound of methamphetamine in California, splitting it with other individuals, and having three-quarters of an ounce of methamphetamine left. The State charged Descharme with trafficking in methamphetamine, possession of drug paraphernalia, resisting or obstructing officers, and misdemeanor DUI.

Prior to trial, Descharme filed a motion to suppress, arguing she was unlawfully arrested when officers handcuffed her. The district court denied the motion, concluding that Descharme "effectively" consented to being transported to the police station for evidentiary testing under I.C. § 18-8002. The district court reasoned that Descharme's implied consent to evidentiary testing

---

[1]       *See Miranda v. Arizona*, 384 U.S. 436 (1966)

6

under I.C. § 18-8002 "necessarily involved being transported to the police station" for the testing because "the appropriate equipment for the testing was unavailable where officers initially encountered her." *Descharme*, 171 Idaho at 536-37, 523 P.3d at 496-97. Additionally, the district court determined the officer's use of handcuffs was "a matter of routine to ensure officer's safety" and did not transform Descharme's detention into an arrest. *Id*. at 537, 523 P.3d at 497. Consequently, the district court concluded Descharme's transport to the police station in a patrol vehicle while handcuffed was reasonable under the Fourth Amendment. Descharme appealed, challenging the denial of her motion to suppress. Descharme argued that a reasonable person would not understand the implied consent arising from I.C. § 18-8002 to also entail an implied consent to handcuffing and transport to a police station.

This Court agreed with Descharme and held that her "implied consent to evidentiary testing under I.C. § 18-8002 did not include an additional implied consent to being handcuffed and transported to the police station for purposes of conducting evidentiary testing." *Descharme*, 171 Idaho at 538, 523 P.3d at 498. Determining the scope of the implied consent provided under I.C. § 18-8002 was a question of statutory interpretation for the Court. We held the statutory text in question "unambiguously deems those driving or in actual physical control of motor vehicles to have consented only to evidentiary testing." *Descharme*, 171 Idaho at 538, 523 P.3d at 498. Additionally, this Court noted that I.C. § 18-8002 does not mention consent to seizures incidental to affecting the contemplated evidentiary testing. *Id*. This Court therefore concluded that the scope of the implied consent provided under I.C. § 18-8002 did not include an implied consent to being handcuffed and transported to the police station for the purpose of conducting evidentiary testing. *Descharme*, 171 Idaho at 538, 523 P.3d at 498.

However, this conclusion did not end our inquiry. After resolving the consent question, we addressed the State's argument that, regardless of the scope of Descharme's implied consent, handcuffing and transporting her to the police station were reasonable means of effecting her implied consent to evidentiary testing and, therefore, did not constitute an unreasonable seizure or de facto arrest. In response, Descharme argued she was subject to a de facto arrest when, after failing to pass the field sobriety testing, she was handcuffed, read her *Miranda* rights, and transported to the police department. This Court again agreed with Descharme. The record showed that Descharme submitted to all three forms of evidentiary testing at the police station.

When breath alcohol testing indicated that Descharme had a 0.000 blood alcohol concentration, fire department personnel attempted to draw a sample of her blood. When that was unsuccessful, a urine sample was collected. We held that, even if the police station was the only location officers could access equipment to collect a sample of Descharme's breath, the record failed to indicate why her presence at the police station was a reasonable means of expediting the evidentiary testing relative to available alternatives. In light of the above and considering the totality of the circumstances, we held that Descharme's transport to the police station while handcuffed constituted a de facto warrantless arrest. *Descharme*, 171 Idaho at 539, 523 P.3d at 499. Because the warrantless arrest was based upon probable cause of a misdemeanor DUI completed outside an officer's presence, the arrest was unlawful under the Idaho Constitution. *Id*. Accordingly, Descharme's motion to suppress should have been granted, and this Court consequently vacated her judgment of conviction. *Id*. at 539-40, 523 P.3d at 499-500.

Although the scope of the detention at issue in *Descharme* was framed as a de facto arrest, our analysis did not include a discussion of the factors governing de facto arrests. Factors to be considered in distinguishing an investigative detention from a de facto arrest include the seriousness of the crime, the location of the encounter, the length of the detention, the reasonableness of the officer's display of force, and the conduct of the suspect as the encounter unfolds. *State v. Ferreira*, 133 Idaho 474, 480, 988 P.2d 700, 706 (Ct. App. 1999). While we cited these factors early in the *Descharme* opinion as relevant to whether an investigatory detention is reasonable, they were not applied in resolving whether Descharme's transport to the police station was reasonable. Instead, we noted that, in *Hayes v. Florida*, 470 U.S. 811, 816 (1985), the United States Supreme Court held that the involuntary transport of a suspect to a police station for investigative purposes resembles a formal arrest and requires probable cause or judicial authorization. *Descharme*, 171 Idaho at 539, 523 P.3d at 499. We then reasoned: "Even if some testing equipment was located at the police station, it does not necessarily follow that Descharme's transport to that equipment was the least intrusive means necessary to conduct evidentiary testing." *Id*. Citing *Clarke*, we concluded: "Because the warrantless *arrest* was based upon probable cause of a misdemeanor DUI completed outside an officer's presence, the *arrest* was unlawful under the Idaho Constitution." *Descharme*, 171 Idaho at 499, 523 P.3d at 499 (emphasis added). Thus,

8

despite some references to the de facto arrest doctrine, *Descharme* turned on our conclusion that Descharme's detention amounted to more than a de facto arrest--it was an arrest.

Unlike the defendant in *Descharme*, Cenarrusa was not arrested until the deputies learned of his five prior DUI convictions, which made this DUI a felony. Nor was Cenarrusa subject to a detention that could be characterized as a de facto arrest. The district court found that the deputy's statement that Cenarrusa "would be released regardless of the results of the breath test is the most critical evidence establishing an investigative detention" rather than finding the encounter escalated to a de facto arrest. The district court further found that the officer's use of handcuffs and placing Cenarrusa in the back of the patrol car "came very close to the threshold of what is reasonably intrusive to investigate a drunk driving incident." However, the district court also found:

> [T]he detention before the breath test was limited in scope and duration, the detention was devoted only to a DUI investigation, breath-testing device was at the scene, and the officers clearly and repeatedly communicated to [Cenarrusa] that he was going to be released regardless of the results of the breath test . . . . Handcuffing may promote officer safety and prevent tampering or damage to equipment or to the patrol vehicle. For these reasons, the handcuffing and placing of [Cenarrusa] in the back of a patrol car did not cross the line from an investigatory detention to an arrest.

The district court, therefore, found that the investigatory detention for purposes of obtaining a breath sample was reasonable and did not amount to a de facto arrest.

In any event, in our view, *Clarke* was only intended to apply to actual arrests. Extending *Clarke*'s scope to encompass arguments based on the de facto arrest doctrine is not only beyond the plain language and reasoning in *Clarke*, doing so is unnecessary to effectuate the purposes of the de facto arrest doctrine. The exclusion of evidence as a consequence of an unreasonable detention, including one that amounts to a de facto arrest, is not dependent on *Clarke*'s misdemeanor felony distinction for purposes of a formal arrest. Although we conclude that Cenarrusa is not entitled to suppression in this case, if he had demonstrated that his detention was unreasonable, suppression would have been warranted if evidence was obtained as a result. We would not need to invoke *Clarke* in order to reach that conclusion and we decline to overlay *Clarke* on to the de facto arrest analysis historically applied by Idaho's trial and appellate courts.

9

Cenarrusa has failed to show that the district court erred in finding that his detention was reasonable.

Further, Cenarrusa's characterization of the police encounter, prior to the deputy discovering Cenarrusa's prior convictions as an arrest "without a warrant for a completed misdemeanor," is a mischaracterization of the facts. While unknown to the deputy at the time of handcuffing Cenarrusa, from the moment he began driving his car under the influence of alcohol or with a breath alcohol concentration (BAC) exceeding the legal limit while also having five prior convictions for DUI, Cenarrusa was committing the offense of felony driving under the influence. Cenarrusa's characterization suggests that anytime an officer begins a DUI investigation, it is presumed to be a misdemeanor rather than a felony. Cenarrusa states, "[a]t the time of the de facto arrest, the deputies suspected [he] committed the completed misdemeanor of DUI." Cenarrusa follows this statement with citations to the record on pages 71 and 84. However, these citations to the record do not reflect any statement concluding that the deputies, at any point, believed that Cenarrusa had committed a misdemeanor rather than a felony. With the facts known to the deputy upon arriving at the scene, she was investigating a potential DUI. The facts also indicate that the deputy contemplated that it could be a felony DUI given what she told Cenarrusa relative to the prospect of being arrested, i.e., he would only be arrested if it was a felony. The deputy's ultimate discovery during the investigatory detention that the DUI was, in fact, a felony did not transform the initial investigation into a misdemeanor DUI investigation.

Finally, Cenarrusa cites *State v. Amstutz*, 169 Idaho 144, 150, 492 P.3d 1103, 1109 (2021) in support of his proposition that an "arresting officer must have knowledge at the time of the arrest that the arrest was for a felony offense." However, *Amstutz* is not instructive here because the officer in *Amstutz* actually arrested the suspect before knowing whether the DUI was a misdemeanor or felony. Here, Cenarrusa was not arrested until after the deputy knew of the prior DUI convictions, which rendered this DUI a felony. As we have previously stated, placing Cenarrusa in handcuffs in the back of the patrol car and telling him that he would be free to leave regardless of the breath test results, unless the DUI is a felony, does not amount to an arrest or a de facto arrest. Cenarrusa has failed to show the district court erred in denying his motion to suppress.

10

## IV.

## CONCLUSION

The legal principle from *Clarke*, that an individual may not be arrested for a misdemeanor offense committed outside the presence of law enforcement, applies only to actual arrests; it does not apply to de facto arrests. Cenarrusa's claim that he is entitled to relief under *Clarke* based on his assertion that he was subject to a de facto arrest fails as does his claim that he was subject to a de facto arrest. Thus, the district court did not err in denying Cenarrusa's motion to suppress. Cenarrusa's judgment of conviction for felony driving under the influence, is affirmed.

Judge HUSKEY and Judge LORELLO, **CONCUR**.