**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 51085**

| | |
|---|---|
| STATE OF IDAHO,<br><br>       **Plaintiff-Respondent,**<br><br>v.<br><br>**THOMAS WILLIAM SCHEID,**<br><br>       **Defendant-Appellant.** | )<br>)  **Filed: February 26, 2025**<br>)<br>)  **Melanie Gagnepain, Clerk**<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Jonathan Medema, District Judge.

Judgment of conviction for trafficking in methamphetamine or amphetamine, <u>affirmed</u>.

Attorneys of Idaho; J.W. Bond and Sarah Tompkins, Boise, for appellant.

Hon. Raúl R. Labrador, Attorney General; Kale D. Gans, Deputy Attorney General, Boise, for respondent.

_____

LORELLO, Judge

Thomas William Scheid appeals from his judgment of conviction for trafficking in methamphetamine or amphetamine. We affirm.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

Officers received a report from a 911 caller who reported that Scheid was in possession of a large quantity of methamphetamine. The caller stated she was with Scheid at a hotel in Boise when she saw he had a container of methamphetamine. According to the caller, Scheid was checking out of his hotel room and driving an unregistered black pickup that appeared to be spray painted, "like stucco." The caller also told law enforcement that Scheid was transporting approximately "an ounce of meth" in a magnetic container that was attached to the pickup's

1

undercarriage. The caller indicated the pickup did not belong to Scheid, provided the pickup's license plate number, and advised law enforcement that Scheid was armed. While the caller told the 911 dispatcher that she did not want her identity "on the record," she nevertheless provided her full name.

An officer responded to the caller's tip and, on the way to the hotel, saw a pickup matching the caller's description of the pickup Scheid was driving that was heading away from the hotel. The officer determined that the pickup had no insurance and an expired registration. Based on his observations and the caller's tip, the officer initiated a traffic stop. Scheid told the officer that he did not own the pickup and was borrowing it with the owner's permission. Scheid also advised the officer that he was carrying a firearm and a knife, which the officer removed after having Scheid exit the pickup. During the course of his investigation, the officer received a call from a canine unit officer who stated he was enroute to the traffic stop. Soon thereafter, the canine unit officer arrived at the scene with a drug dog and conducted a drug-detection-sniff of the pickup while the other officer continued working on issuing Scheid a traffic ticket. During the sniff, the dog jumped on the exterior of the pickup. Ultimately, the drug dog alerted to the presence of narcotics in the pickup. A search of the pickup yielded methamphetamine, an improvised explosive device, and drug paraphernalia. The State subsequently charged Scheid with trafficking in methamphetamine or amphetamine, unlawful possession of a bomb or destructive device, and possession of drug paraphernalia.

Scheid filed a motion to suppress the evidence found in the pickup he was driving on two grounds. First, Scheid argued that the traffic stop was unlawfully extended when the officer stopped running Scheid's information "to take a phone call from a narcotics officer who was traveling to the scene." Second, Scheid argued he was subject to an unreasonable search because the drug dog "repeatedly and continually committed a series of physical trespasses against the exterior of" the pickup. In addressing Scheid's motion, the district court considered testimony from both officers, video from the officers' body cameras, and a recording of the caller's report to law enforcement. At a subsequent hearing, the district court denied Scheid's motion.

The district court determined that, based on the caller's report, the officers had reasonable suspicion to detain Scheid in order to investigate whether he possessed drugs. The district court also found the drug dog in this case committed a trespass "when he put his paws up on the" pickup.

2

After reviewing the canine unit officer's testimony, the district court determined the officer "offered an opinion that the dog was, at least, detecting the odor of a controlled substance before" putting his paws on the pickup. The district court was unsure whether this "dog alert alone would be sufficient to establish probable cause under these circumstances in the absence of the" information provided by the 911 caller. Under the totality of the circumstances, the district court concluded the caller's report and the drug dog's change in behavior prior to the trespass established probable cause to believe the pickup Scheid was driving contained contraband. Accordingly, the district court concluded the officers were "authorized to search the" pickup under "the automobile exception to the warrant requirement."

Scheid subsequently entered into a conditional guilty plea to trafficking in methamphetamine or amphetamine, I.C. § 37-2732B(a)(4)(A), specifically reserving his right to challenge the district court's denial of his motion to suppress. In exchange for his guilty plea, the State dismissed the possession charges. Scheid appeals.

## II.

## STANDARD OF REVIEW

The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999).

## III.

## ANALYSIS

Scheid argues the district court erred in denying his motion to suppress because the initial traffic stop was unlawfully extended. Scheid further argues the district court erred in finding that the officers had reasonable suspicion to investigate him for a drug investigation. Finally, Scheid contends the district court erred in concluding that the officers had probable cause to search the pickup. The State responds that "the traffic stop was not unreasonably extended" and that the

3

record and applicable law support both the district court's reasonable suspicion and probable cause determinations. We hold Scheid has failed to show the district court erred in denying his motion to suppress.

**A.      Traffic Stop**

A traffic stop by an officer constitutes a seizure of the vehicle's occupants and implicates the Fourth Amendment's[1] prohibition against unreasonable searches and seizures. *Delaware v. Prouse*, 440 U.S. 648, 653 (1979); *Atkinson*, 128 Idaho at 561, 916 P.2d at 1286. Under the Fourth Amendment, an officer may stop a vehicle to investigate possible criminal behavior if there is a reasonable and articulable suspicion that the vehicle is being driven contrary to traffic laws. *United States v. Cortez*, 449 U.S. 411, 417 (1981); *State v. Flowers*, 131 Idaho 205, 208, 953 P.2d 645, 648 (Ct. App. 1998). In the traffic stop context, authority for a seizure ends when the tasks related to the stop are, or reasonably should have been, completed. *Illinois v. Caballes*, 543 U.S. 405, 407 (2005). Tasks related to a traffic stop include addressing the traffic violation that precipitated the stop; determining whether to issue a traffic ticket; and making inquiries incident to the traffic stop, such as checking the driver's license, inspecting the vehicle's proof of insurance and registration, and conducting a criminal record check of the driver. *Rodriguez v. United States*, 575 U.S. 348, 354-55 (2015); *State v. Hale*, 168 Idaho 863, 867, 489 P.3d 450, 454 (2021). Officers may not deviate from the purpose of a traffic stop by investigating (or taking safety precautions incident to investigating) other crimes without reasonable suspicion. *See Rodriguez*, 575 U.S. at 356.

However, the justification for a motorist's detention is not permanently fixed at the moment the traffic stop is initiated. *State v. Wigginton*, 142 Idaho 180, 183, 125 P.3d 536, 539 (Ct. App. 2005). An officer's observations, general inquiries, and events succeeding the stop may--and often do--give rise to legitimate reasons for particularized lines of inquiry and further investigation by an officer. *State v. Myers*, 118 Idaho 608, 613, 798 P.2d 453, 458 (Ct. App. 1990). Furthermore,

---

[1]      Although Scheid also cites Article I, Section 17 of the Idaho Constitution as a basis for his claims, he provides no cogent reason why the Idaho Constitution should be applied differently than the Fourth Amendment to the United States Constitution. Therefore, this Court will rely on judicial interpretation of the Fourth Amendment to analyze Scheid's claims. *See State v. Descharme*, 171 Idaho 533, 536, 523 P.3d 493, 496 (Ct. App. 2022).

even without reasonable suspicion, officers may engage in lines of investigation unrelated to an otherwise lawful traffic stop as long as doing so does not prolong the stop. *See Caballes*, 543 U.S. at 409 (holding that a dog sniff conducted during an otherwise lawful traffic stop does not violate the Fourth Amendment); *Hale*, 168 Idaho at 867, 489 P.3d at 454 (recognizing the officers may "conduct certain unrelated checks" during a traffic stop).

The first officer in this case testified that, as he was driving to the hotel, he saw "a [pickup] matching the description" of the pickup the caller reported. After approaching the pickup, the officer verified the pickup's license plate number matched the number provided by the caller. The officer testified that, at this point, he was "primarily engaged in investigating a narcotics violation." However, the officer ran the pickup's "license plates [and] found that the registration was currently suspended for no insurance." Thus, the officer initiated a traffic stop "for both purposes," i.e., the traffic violation and "the original suspicion [he] already developed for the narcotics investigation." Scheid identified himself and told the officer he was carrying a firearm and a knife, which the officer removed after having Scheid exit the pickup. The officer ultimately determined that Scheid's driver's license was suspended.

As the officer was investigating Scheid's information, he received a call from a canine unit officer who indicated he was enroute to the location of the stop. The canine unit officer can be heard on the first officer's on-body video saying, "Don't worry about time with that, uh, information that you have, we're good hanging on to [Scheid] longer than just a regular traffic stop." The first officer continued working on the traffic stop until the canine unit officer informed him that the drug dog alerted on the pickup. Upon review of the officers' testimony, the district court concluded that Scheid's seizure was "justified both at its inception and in its duration to investigate the drug offense as well as the traffic offense."

On appeal, Scheid contends the district court erred when it concluded the traffic stop was not unlawfully extended. Specifically, Scheid argues the traffic stop was unlawfully extended because of a thirty-second-period during which the first officer "was not taking any action relating to the traffic offenses at issue" and "instead stopped his course of action to" take a phone call from the canine unit officer. Relying on *Rodriguez*, 575 U.S. at 354-58, Scheid argues the district court erred because "any measurable extension of the duration of a traffic stop for purposes of facilitating or conducting a dog sniff is an unlawful extension of the stop." We disagree.

5

In cases where a defendant asserts a traffic stop was unlawfully extended as a result of a drug-dog sniff, whether the officer "abandoned" the traffic stop is not determinative. *State v. Karst*, 170 Idaho 219, 223, 509 P.3d 1148, 1152 (2022). Instead, the critical question is whether the sniff prolongs or adds time to the traffic stop. *Id.*; *State v. Linze*, 161 Idaho 605, 609, 389, P.3d 150, 154 (2016). For example, a dog sniff does not prolong a stop "where one officer pursues the original objective of the stop while another officer conducts the dog sniff." *State v. Riley*, 170 Idaho 572, 579, 514 P.3d 982, 989 (2022). However, a dog sniff "unlawfully prolongs the stop where the officer detours from the stop to radio for a drug dog, even if it only extends the seizure by mere seconds." *Id*. This rule, which stems from *Rodriguez*, 575 U.S. 348, "is both broad and inflexible," and "applies to all extensions of traffic stops including those that could reasonably be considered de minimis." *Id.* at 578, 514 P.3d at 988.

Scheid and the State agree that the initial traffic stop for the pickup's suspended registration was lawful. As such, our inquiry focuses on whether the first officer unlawfully prolonged the traffic stop when he took the canine unit officer's call. A review of the record supports the district court's determination that the officer did not prolong the stop by taking the canine unit officer's call. The first officer's on-body video shows him working on Scheid's traffic ticket prior to answering the canine unit officer's call. Notably, the first officer continued to work on Scheid's traffic ticket while the drug dog performed the sniff on the pickup. The record further shows that the drug dog alerted to the presence of narcotics before the first officer completed the traffic ticket. Because the drug dog alerted on the pickup before the traffic ticket was completed, the first officer did not prolong or add time to the stop by answering the canine unit officer's call.

In an attempt to further bolster his argument, Scheid cites the first officer's testimony where he states that, if he had not stopped to take the canine unit officer's call, "he could have completed the stop faster." Scheid asserts that, "given this, there does not seem to be any meaningful dispute in this case that the traffic stop" was prolonged by the first officer answering the call. This Court is not persuaded by Scheid's argument. The Idaho Supreme Court has made clear that the critical question is whether the drug-dog sniff prolongs the overall duration of the traffic stop. *See Riley*, 170 Idaho at 578, 514 P.3d at 988. That the first officer testified he could have completed the stop faster had he not answered the canine unit officer's call does not mean the traffic stop was unlawfully extended. Substantial evidence supports the district court's conclusion that the duration

6

of the traffic stop was justified. Accordingly, Scheid has failed to show the district court erred in concluding that the traffic stop was not unlawfully extended.

**B.** **Reasonable Suspicion for Drug Investigation**

Reasonable suspicion must be based upon specific, articulable facts which justify suspicion that the detained person is, has been, or is about to be engaged in criminal activity. *State v. Sheldon*, 139 Idaho 980, 983, 88 P.3d 1220, 1223 (Ct. App. 2003). An officer may draw reasonable inferences from the facts in his or her possession, and those inferences may be drawn from the officer's experience and law enforcement training. *State v. Montague*, 114 Idaho 319, 321, 756 P.2d 1083, 1085 (Ct. App. 1988). The reasonableness of the suspicion must be evaluated upon the totality of the circumstances at the time of the stop. *State v. Ferreira*, 133 Idaho 474, 483, 988 P.2d 700, 709 (Ct. App. 1999). The reasonable suspicion standard requires less than probable cause but more than mere speculation or instinct on the part of the officer. *Id*. Factual findings that are supported by substantial and competent evidence are not clearly erroneous and will not be overturned on appeal. *State v. Bishop*, 146 Idaho 804, 810, 203 P.3d 1203, 1209 (2009); *See State v. Ish*, 166 Idaho 492, 501, 461 P.3d 774, 783 (2020). *State v. Henage*, 143 Idaho 665, 659, 152 P.3d 16, 20 (2007). Substantial and competent evidence is relevant evidence that a reasonable mind might accept to support a conclusion. *State v. Hess*, 166 Idaho 707, 710, 462 P.3d 1171, 1174 (2020).

Relying on the 911 caller's report, and after "balancing the totality of the circumstances," the district court determined there was a basis for the officers to detain and investigate Scheid for a drug offense. The caller indicated she knew and interacted with Scheid "for several years." Additionally, the caller provided her name and stated that ten minutes prior to her call, "she was in the hotel room with [Scheid], and he had an ounce of methamphetamine." The district court found that the caller reported "fairly specific facts" that were "based on alleged firsthand observations of events as they were occurring about ten minutes before the call." Though there was "no immediate corroboration by the police," the district court noted that, "within a reasonable period of time," the officers were able to locate Scheid, who was driving a pickup that matched the description of the pickup provided by the caller. The district court also highlighted the caller's predictions to law enforcement. The caller told law enforcement that Scheid would be leaving the hotel and provided a description of the pickup he would be driving, as well as the pickup's license

plate number. The district court stressed that the State did not argue that the caller's tip "alone established probable cause to believe" the pickup contained drugs. Accordingly, the district court concluded "there was a basis based on the informant's call to detain [Scheid] to investigate whether" he possessed drugs, "but not to search the [pickup]."

On appeal, Scheid asserts the district court erred in concluding the officers had reasonable suspicion to investigate Scheid for a drug offense. Specifically, Scheid contends that, while the district court was correct in finding the caller in this case was anonymous, the district court "failed to act consistently with the legal standards for such tips in deeming it sufficiently reliable to establish reasonable suspicion for purposes of a drug investigation." The State responds that, despite the district court's erroneous finding that the caller in this case was anonymous,[2] the district court "correctly determined the tip provided reasonable suspicion to detain Scheid for a drug investigation." We agree with the State.

Tips from informants about suspected criminal activity can support reasonable suspicion. *Bishop*, 146 Idaho at 811, 203 P.3d at 1210. To justify an investigative detention, however, the tip must bear sufficient indicia of reliability in light of the totality of the circumstances. *Id.* Factors indicative of reliability include whether: the informant reveals his or her identity and the basis of his or her knowledge; the location of the informant is known; the information was based on firsthand observations of events as they were occurring; the information the informant provided was subject to immediate confirmation or corroboration by police; the informant has previously provided reliable information; the informant provides predictive information; and the informant could be held criminally liable if the report were discovered to be false. *Id.* at 812, 203 P.3d at 1211.

Anonymous tips that merely describe suspects and implicate them in a crime generally do not, by themselves, support reasonable suspicion. *See id.* For example, an anonymous tip that described the race, shirt, and location of an individual and claimed that the individual possessed a

---

[2]     For purposes of this appeal, we need not decide whether the district court correctly characterized the 911 caller as "anonymous." However, we note that an individual's stated desire to remain "anonymous" does not make the individual anonymous for purposes of a Fourth Amendment analysis. *See State v. Larson*, 135 Idaho 99, 101-02, 15 P.3d 334, 336-37 (Ct. App. 2000) (explaining that where a caller's identity is readily ascertainable, the caller is a known citizen informant, not an anonymous tipster).

gun was not sufficient to provide reasonable suspicion because the informant failed to explain "how he knew about the gun" and did not provide a "basis for believing he had inside information about" the individual. *Florida v. J.L.*, 529 U.S. 266, 268, 271 (2000). Moreover, there was no evidence indicating how quickly law enforcement responded to the tip.

In contrast, an anonymous tip giving the direction of travel, location, license plate number, color, and make and model of a vehicle that the informant claimed had run her off the road about five minutes prior to the call had "adequate indicia of reliability for the officer to credit the [informant's] account." *Navarette v. California*, 572 U.S. 393, 395, 398-401 (2014). This information was sufficiently reliable under the circumstances because: (1) the informant's report of being run off the road "necessarily" implied that the informant had "eyewitness knowledge of the alleged dangerous driving"; (2) the "timeline of events suggest[ed] that the [informant] reported the incident soon after she was run off the road" and police confirmed the location of the vehicle about eighteen minutes after the call; and (3) the informant made a call to a 911 emergency system, which generally has "features that allow for identifying and tracing callers" that "provide some safeguards against making false reports with immunity." *Id.* at 400. Those features include recording a caller's voice, potentially allowing identification and prosecution of the informant for giving false information; identifying the caller's geographic location; and obtaining the phone number of the caller even if the caller attempts to "block call recipients from obtaining their identifying information." *Id.* at 400-01. However, the United States Supreme Court cautioned that "none of this is to suggest that tips in 911 calls are *per se* reliable" and noted that the facts in *Navarette* presented a "close case." *Id.* at 401, 404.

Scheid contends the district court erred in finding reasonable suspicion existed to investigate him for a drug offense because it "incorrectly held that there was any meaningful corroboration of" the 911 caller's report. According to Scheid, the caller's report did not bear sufficient indicia of reliability in light of the totality of the circumstances because "there was no meaningful, predictive corroboration for the" information reported by the caller. We disagree. A review of the record shows that the district court considered the predictions made by the caller's report. Specifically, the caller predicted and told the 911 dispatcher that Scheid would be leaving the hotel, which the district court noted "apparently occurred." The caller also provided law enforcement with a description of the pickup Scheid would be driving, as well as the pickup's

9

license plate number, which the district court found were "certainly true." Further, the caller predicted that the pickup's registration would be suspended due to having no insurance and that Scheid would be armed. The caller also predicted Scheid would be transporting the drugs in a magnetic container attached to the pickup's undercarriage.

The record reveals other factors indicative of the caller's reliability. For example, while the caller told the 911 dispatcher that she did not wish to have her name "on the record," she nevertheless provided her full name. The district court determined that, in the context of the conversation, it was clear the caller was "not trying to hide her identity from the police" and was instead "concerned about her identity being known to" Scheid. As for the basis of the caller's knowledge, the district court found the caller reported "fairly specific facts" that were "based on firsthand observations of events as they were occurring about ten minutes before the call." Thus, unlike the tip in *J.L.*, 529 U.S. at 268, the caller in this case explained how she knew about the drugs and was able to provide law enforcement a basis for believing she had inside information about Scheid. Moreover, while there was "no immediate corroboration by the" officer, the district court found the officer was able to locate Scheid "within a reasonable period of time" of receiving the caller's report. Similar to the tip in *Navarette*, 572 U.S. at 400, the caller in this case also made her report to a 911 dispatcher. As such, the features that allow for identifying and tracing callers that "provide some safeguards against making false reports with immunity" are also present in this case. *Id*. Accordingly, the district court found there was a "possibility" that the caller could be held criminally liable if her report were discovered to be false.

The district court's conclusion that the officer had reasonable suspicion to investigate Scheid for a drug offense based on the information reported by the 911 caller is supported by substantial evidence. Accordingly, Scheid has failed to show the district court erred.

## C.    Probable Cause for Search

Probable cause is the possession of information that would lead a person of ordinary care and prudence to believe or entertain an honest and strong presumption that a person is guilty of a crime. *State v. Williams*, 162 Idaho 56, 66, 394 P.3d 99, 109 (Ct. App. 2016). Probable cause is not measured by the same level of proof required for conviction. *Id*. Rather, probable cause deals with the factual and practical considerations on which reasonable and prudent persons act. *Brinegar v. United States*, 338 U.S. 160, 175 (1949); *Williams*, 162 Idaho at 66, 394 P.3d at 109.

10

When reviewing an officer's actions, the court must judge the facts against an objective standard. *Williams*, 162 Idaho at 66, 394 P.3d at 109. That is, would the facts available to the officer, at the moment of the seizure or search, warrant a reasonable person in holding the belief that the action taken was appropriate. *Id.* A probable cause analysis must allow room for mistakes on the part of the officer but only the mistakes of a reasonable person acting on facts which sensibly led to his conclusions of probability. *State v. Kerley*, 134 Idaho 870, 874, 11 P.3d 489, 493 (Ct. App. 2000).

In this case, the district court concluded that a search occurred when the drug dog "put his paws up on the" pickup, which it deemed a trespass. As a result of the "several" trespasses during the drug-detection dog sniff, the district court determined it could not consider the dog's "final alert" as part of its probable cause analysis. Thus, the district court reasoned that, for the search to be lawful, the State needed to demonstrate it "had probable cause to believe the [pickup] contained contraband before the dog put his paws on it." After reviewing the canine unit officer's testimony, the district court concluded that the officer "offered an opinion that the dog was, at least, detecting the odor of a controlled substance before the dog put his paws on the car." The district court noted that, prior to the trespasses, the drug dog passed the law enforcement vehicles and showed no "discernible change in behavior." However, the district court found that when the drug dog walked by the pickup, the dog's behavior shifted, signaling to the canine unit officer that the drug dog was "now detecting the odor of a controlled substance, and he started to try to track it to its source."

In addition to the canine unit officer's testimony and the drug dog's change in behavior, the district court considered the caller's report. The caller told the 911 dispatcher that she had known and interacted with Scheid "for several years." The caller reported that, ten minutes prior to her call, she had "observed [Scheid] put a significant quantity of methamphetamine in a container." The caller also reported that Scheid was checking out of the hotel and that the drugs would be secured in a magnetic container attached to the pickup's undercarriage. The caller described the pickup and provided the pickup's license plate number. Additionally, the caller informed the dispatcher that the pickup's registration was expired, the pickup did not belong to Scheid, Scheid was carrying firearms, and provided a description of what Scheid was wearing that day. When the officer found the pickup driving away from the hotel, he also found an individual matching the name and description the caller provided. The district court stated that, absent the

information provided by the 911 caller, it was unsure if it "could find probable cause" to search the pickup "based solely on the dog's change of behavior," especially in light of the drug dog's trespasses. However, when it considered the caller's report to the police along with the drug dog's change in behavior prior to the trespass, the district court found the officers "had probable cause to believe [Scheid's pickup] contained contraband." Thus, the district court concluded the officers were authorized to search the pickup "under the automobile exception to the warrant requirement."

On appeal, Scheid asserts the district court erred when it found probable cause existed to search the pickup "despite finding that no reliable drug dog alert occurred prior to multiple trespasses against the" pickup. According to Scheid, a review of the canine unit officer's testimony "does not show any alert, as this term is understood in the context of the case law, ever occurred prior to the trespassory searches in this case." Contrary to Scheid's assertion, the record shows that the canine unit officer testified that the drug dog alerted to the presence of narcotics prior to the trespasses. The State played the canine unit officer's on-body video at the motion to suppress hearing and the canine unit officer testified as follows:

[Prosecutor]: Okay. And, Officer, here we see the dog putting its paws on the vehicle for the first time. Would you agree?

[Canine Unit Officer]: Yeah. And one thing that you may have missed is when he comes back to the left he sniffs down low by the running board, and you see a quick bop of the head going up and then both heads -- or, I'm sorry, both paws go up, just prior to that.

(Playing of State's Exhibit 1, a video, continued)

. . . .

[Prosecutor]: So, Officer, again we know that the paws went up on the car. And this is difficult to be precise on when I can't see it on my screen, but let me back up some here. Okay. So that appears to be right before the dog's paws first contact the [pickup]; is that right?

[Canine Unit Officer]: Correct.

[Prosecutor]: Based on your training and experience has the dog at this point provided significant enough behavior changes for you to believe, based on your training and experience, that it has alerted to the odor of narcotics in this car?

[Canine Unit Officer]: Absolutely.

The officer further testified that his determination about the drug dog's general alert was based on his training and experience, including working with the drug dog "thousands of times." Additionally, Scheid's assertion that there was no "alert" as the terms is understood in the context

of case law is incorrect. *See State v. Ricks*, 173 Idaho 74, 77 n.1, 539 P.3d 190, 193 n.1 (2023) (holding that the phrase "general alert" and/or the term "alert" refers to "a dog's behavior signaling the dog detects the odor of drugs he is trained to locate" and that the phrase "final indication" means "the dog's trained response pinpointing the strongest source of the odor").

Scheid also contends the district court erred in relying on the canine unit officer's "opinion or belief that his dog was detecting the odor of narcotics prior to the trespassory searches" in making its probable cause determination. Scheid argues this was error because the "applicable legal standards require objectively reasonable and reliable evidence of an actual alert, beyond the mere beliefs of the dog's handler." However, the district court's probable cause determination was not based solely on the canine unit officer's subjective belief that the drug dog alerted to the presence of narcotics prior to the trespasses. The proper inquiry is whether objective evidence supports the canine unit officer's belief. *Ricks*, 173 Idaho at 80, 539 P.3d at 196. The mere fact that the canine unit officer expressed his subjective belief when explaining the objective evidence is not a basis to reject that objective evidence. *Id.*

Finally, Scheid asserts the district court erred "when it used information supplied by the unknown informant to supplement and bolster the record of the drug dog's behavior prior to the trespassory searches in this case." According to Scheid, the district court erred when it "looked to extraneous facts and circumstances outside of the sniff itself to cure the State's evidentiary deficiency." To that point, Scheid contends he has been "unable to find a single case where a deficient purported alert could be 'cured' by looking to facts outside of those bearing on the sniff itself." Scheid's argument misconstrues the district court's findings. The district court did not find that the drug dog's alert was "deficient," nor did it conclude that the State "cured" the alleged deficiency. Rather, the district court found that the drug dog's change in behavior prior to the trespasses signaled to the canine unit officer that the drug dog was alerting to the presence of drugs. The district court then considered this general alert from the drug dog along with circumstances other than the sniff itself (such as the information provided by the 911 caller) in evaluating whether the totality of the circumstances gave rise to probable cause for the officers to search the pickup. Cases from other jurisdictions support the district court's probable cause analysis in this case. *See*, *e.g.*, *United States v. Holleman*, 743 F.3d 1152, 1157-58 (8th Cir. 2014) (holding that the drug dog's general alert established probable cause when viewed in light of the totality of the

13

circumstances available to the officer at the time of the stop); *United States v. Winters*, 600 F.3d 963, 968 (8th Cir. 2010) (holding a defendant's furtive movements, body tremor, dilated pupils, and strong chemical odor, "when added to [the drug dog's alerts], clearly support the district court's ruling that the officers had probable cause to conduct the post-sniff search of [the defendant's] person incident to his arrest"); *People v. Bailey*, 427 P.3d 821, 828-29 (Colo. 2018) (holding the drug dog's initial alert, "when considered in conjunction with" other circumstances present, provided the troopers probable cause to believe there were narcotics in the defendant's car); *Phippen v. State*, 297 P.3d 104, 109 (Wyo. 2013) (declining to decide whether the drug dog's alert alone would have established probable cause because "additional facts beyond the dog search were used by the district court to conclude probable cause existed," including a trip from a hotel employee who reported smelling marijuana in the defendant's room).

The district court's conclusion that the totality of the circumstances, including the 911 caller's report and the drug dog's general alert prior to any trespass, gave the officers probable cause to search the pickup is supported by substantial evidence. Scheid has failed to show otherwise.

## IV.

## CONCLUSION

The district court's conclusion that the traffic stop was not unlawfully extended is supported by substantial evidence. Additionally, substantial evidence supports the district court's reasonable suspicion and probable cause findings. Scheid has failed to show the district court erred in denying his motion to suppress. Accordingly, Scheid's judgment of conviction for trafficking in methamphetamine or amphetamine is affirmed.

Judge HUSKEY and Judge TRIBE, **CONCUR**.